IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ISAHA CASIAS,

        Plaintiff,

v.                                                                   No. Civ. 16-cv-56 JCH/SCY

STATE OF NEW MEXICO DEPARTMENT
OF CORRECTIONS; TARACINA MORGAN; and
HERMAN GONZALES,

        Defendants.

## MEMORANDUM OPINION AND ORDER

On December 9, 2016, Defendants State of New Mexico Department of Corrections ("DOC"), Taracina Morgan, and Herman Gonzales (collectively, "Defendants") filed a Motion for Partial Summary Judgment and Memorandum Brief in Support (ECF No. 63). The Court, having considered the motion, briefs, evidence, and applicable law, concludes that issues of genuine material fact exist for resolution by a jury that precludes granting Defendants summary judgment or qualified immunity. The Court will therefore deny Defendants' motion for partial summary judgment.

### I.    FACTUAL BACKGROUND[1]

Plaintiff Isaha Casias was committed to the custody of the DOC for a term of incarceration of two years and six months on June 10, 2013. Defs.' Mot., Undisputed Fact ("UF") ¶ 1, ECF No. 63. On June 13, 2013, Plaintiff was taken for intake into the DOC to Central New Mexico Correctional Facility ("CNMCF")/Reception and Diagnostic Center

---

[1] Many of the facts are undisputed, but where a dispute exists and Plaintiff submitted admissible evidence in support thereof, the Court has construed those facts in favor of Plaintiff, as it must on summary judgment. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1863, 1868 (2014) (reaffirming that on motion for summary judgment evidence of non-movant is to be believed and all reasonable inferences should be drawn in non-movant's favor). The following facts are those a reasonable jury could find based on the evidence.

("RDC"). *Id.* UF ¶ 2.

On July 11, 2013, Plaintiff and other inmates were handcuffed, shackled with leg irons, and loaded into a van at 6:00 a.m. at RDC. Pl.'s Resp. UF ¶ A, ECF No. 70. Plaintiff was transported by van from RDC to the Western New Mexico Correctional Facility in Grants, arriving around 8:00 a.m., where the inmates were taken out of the van and brought into the intake area holding cells while Correction Officers Morgan and Gonzales picked up one more inmate. *Id.* UF ¶ C; Dep. of Taracina Morgan 51:21-25, ECF No. 82-1.

From the Western New Mexico Correctional Facility in Grants, Defendants transported the inmates to the Penitentiary of New Mexico in Santa Fe ("PNM South") and arrived at 11:30 a.m. *See* Pl.'s Resp. UF ¶ C, Transportation Officer Daily Log at 2, ECF No. 70-1. It was very hot that day and was becoming uncomfortable in the van by the time it stopped at PNM South, as there were no windows in the back of the van and the air conditioning did not work well. Aff. of Isaha Casias ¶ 5, ECF No. 70-6. At PNM South, Defendant Gonzales turned off the van and went inside to pick up another inmate while Defendant Morgan stayed with the inmates in the van. *Id.* ¶ 6. Defendant Morgan opened the back van doors while they waited, but even with the doors open, the inmates were hot and sweating. *Id.* ¶¶ 7-8. After one of the van doors blew closed, several inmates complained to Defendant Morgan about the heat, asking her to let them out until Defendant Gonzales returned, but she refused, telling them to shut up, "stop bitching," and that children could handle more than what they were complaining about. *Id.* ¶¶ 8-9. Defendant Gonzales returned to the van with two more inmates, and the van departed PNM South at approximately 12:30 p.m. Pl.'s Resp. UF ¶ I, ECF No. 70.

The transport van arrived at PNM North a few minutes later, sometime between 12:31 p.m. and 12:35 p.m. *See* Def.'s Mot. UF ¶ 6; Pl.'s Resp. UF ¶ I; Transportation Officer Daily

Log at 2, ECF No. 70-1. Defendant Herman Gonzales drove the van between CNMCF and PNM North. Def.'s Mot. UF ¶ 5, ECF No. 63. After the van arrived at PNM North to pick up another inmate, Defendant Gonzales turned off the van and both Defendants Gonzales and Morgan got out of the van and went into the facility at the same time. *See* Pl.'s Resp., Ex. 3 (Telephonic Interview Tr. of Tarracina Morgan dated Aug. 5, 2013) at 5-7, ECF No. 70-3, and Ex. 4 (Interview Tr. of Herman Gonzales dated Aug. 5, 2013) at 10-13, ECF No. 70-4; Aff. of Isaha Casias ¶ 12, ECF No. 70-6. Once in the building, Defendant Morgan told Defendant Gonzales, "Wait in here for the inmate. I'm going to go get the file." Pl.'s Ex. 4 at 12, ECF No. 70-4.

By turning off the van, there was no air conditioning circulating in the back of the van and all the windows and doors were closed. Aff. of Isaha Casias ¶ 12, ECF No. 70-6. After 10-15 minutes, the inmates began to panic because it had become unbearably hot in the van, so much so that Plaintiff felt like he was being cooked alive and their paper jumpsuits were completely soaked in sweat and the inside of the metal cage began to drip with their sweat. *See id.* ¶¶ 13-15. Plaintiff blacked out and when he regained consciousness, the other inmates were yelling, screaming, whistling, and shaking the van in a desperate attempt to get the attention of somebody inside the facility. *Id.* ¶ 16. Inmates were begging for their lives, and Plaintiff was likewise scared he would die, and he blacked out a second time. *Id.* Inmates were left in the van without air conditioning for approximately 40 minutes. *See* Aff. of Derek Douglass ¶ 7, ECF No. 70-7.

Sergeant Luis Archuleta took an inmate to the van to put him in for transport, and when he opened the van door, an inmate fell off the bench to the floor, twitching, and he looked like he was having a seizure. Interview Tr. of Luis Archuleta 12:2-13:16, ECF No. 70-11. Sergeant Archuleta called medical and reported, "Inmate in the van having a seizure." *Id.* 12:21-23. Corrections Officer Michael Petta observed a second inmate falling and the officers caught him

and pulled him out. Interview Tr. of Michael Petta 6:2-25, ECF No. 70-12. One inmate looked like he was having seizures, and the other was out of it. *Id.* When Defendant Gonzales returned to the transport van, the inmates were complaining about the heat, so he asked the Sally Port Officer to help him get the inmates out of the van. Defs.' Mot. UF ¶ 8, ECF No. 63. An officer picked up Plaintiff and carried him into the facility because he could not walk on his own. Aff. of Isaha Casias ¶ 19, ECF No. 70-6. Plaintiff's body was shaking or convulsing uncontrollably. *Id.* ¶ 18.

Officer Petta ran to the Health Care Unit to inform Dr. Kimberly Birch that inmates were seizing in the transport van, and Dr. Birch responded in less than one minute. Def.'s Mot. UF ¶¶ 9-10, ECF No. 63; Def.'s Ex. G, ECF No. 63-7. Dr. Birch evaluated the inmates and determined that none of them were seizing, but a couple inmates were lethargic and were having involuntary muscle convulsions caused by heat exhaustion and/or dehydration. *See* Def.'s Mot. UF ¶ 11, ECF No. 63; Dep. of Kimberly Birch, MD 13:2-14, 30:4-31:5, 32:4-19, ECF No. 70-9. Dr. Birch admitted that she could not rule out whether an inmate seized or lost consciousness before her arrival. Dep. of Dr. Birch 30:4-31:5, ECF No. 70-9. Dr. Birch also observed that the inmates were pale and profusely sweating so that their clothes were stuck to them, and two of the inmates needed significant assistance out of the van. *Id.* 12:4-20.

Dr. Birch assessed Plaintiff and determined he had either dehydration or heat exhaustion. Defs.' Mot. UF ¶¶ 13, 15, ECF No. 63. Plaintiff was given water to drink. Aff. of Isaha Casias ¶¶ 20, ECF No. 70-6. He felt dizzy, light-headed, and nauseous; he had a bad headache; and he felt pain in his lower back and wrist caused when he almost fell out of the van. Aff. of Isaha Casias ¶¶ 20-21, ECF No. 70-6. Dr. Birch initially recommended that the two inmates stay for observation. Dep. of Dr. Birch 18:1-4, ECF No. 70-9. Defendants, however, objected and said

they could not leave them behind. Aff. of Isaha Casias ¶ 22, ECF No. 70-6. Plaintiff said he did not want to get back on the van. *Id.* ¶ 23. Dr. Birch told Defendants to make sure the inmates stayed cool and had plenty of water to drink and she directed someone on her staff to call the Guadalupe County Correctional Facility ("GCCF") in Santa Rosa to make sure medical saw the inmates. Dep. of Dr. Birch 20:11-21:23, ECF No. 70-9.

All the inmates were evaluated by the medical staff and were then placed back on the van headed for the GCCF in Santa Rosa and then to Lea County Correctional Facility ("LCCF") in Hobbs. Defs.' Mot. UF ¶ 12, ECF No. 63. The van left PNM North around 1:22 p.m. *Id.* UF ¶ 6. Medical staff had a short time to evaluate the inmates before they left. *Compare id. with* Aff. of Derek Douglass ¶ 7, ECF No. 70-7. Between PNM North and the GCCF, Defendant Gonzales again drove the transport van. Def.'s Mot. UF ¶ 5, ECF No. 63.

The inmates were not allowed fluids in the van during the transport. Dep. of Taracina Morgan 88:21-25, ECF No. 70-14. Plaintiff vomited in the van on the way to GCCF and felt extremely ill. Aff. of Isaha Casias ¶ 24, ECF No. 70-6. Defendant Morgan called ahead to GCCF to inform the staff they needed medical, water, and sack lunches when they arrived. Dep. of Tarracina Morgan 95:13-24, ECF No. 82-1.

When the van arrived at GCCF at 3:30 p.m., medical staff met the van. Pl.'s Resp. UF ¶ V, ECF No. 70. Plaintiff showed Defendant Morgan his vomit and asked her if he could see medical, but Defendant Morgan responded, "What's done is done," and refused to let him see medical. Aff. of Isaha Casias ¶ 25, ECF No. 70-6. The inmates were given sack lunches in the GCCF holding cell, but Plaintiff was only able to get a small sip of water because there was only one water fountain and it was impossible to push the button to drink while wearing the handcuffs, so another inmate held the button while they all took turns drinking. *Id.* ¶ 26. Plaintiff

told Defendant Morgan he was unable to get anything to drink in the holding cell, so she gave him a small child-sized juice box. *Id.* Defendants loaded the inmates back into the van without anything more to drink and they left for Hobbs at around 4:00 p.m. *Id.*; Pl.'s Resp. UF ¶ X, ECF No. 70.

Defendant Morgan drove the van from GCCF. Defs.' Mot. UF ¶ 5, ECF No. 63. They arrived at LCCF at around 7:25 p.m. Pl.'s Resp. UF ¶ X, ECF No. 70. Upon arrival, Plaintiff immediately asked to see medical, but Defendant Morgan tried to downplay the incident and indicated that the other inmates were lying and that nothing happened. Aff. of Isaha Casias ¶ 27, ECF No. 70-6. Plaintiff eventually received medical and mental health treatment at LCCF. *Id.* ¶ 29. Months passed before Plaintiff's wrist and back felt better and he still experiences mental pain and suffering from the incident. *Id.*

## II. STANDARD

On a motion for summary judgment, the moving party initially bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (internal quotations omitted). Under Rule 56(c), only disputes of facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48

(1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See id.* at 248.

In order to defeat a qualified immunity defense, the plaintiff must both "demonstrate that the defendant's actions violated a constitutional or statutory right" and "show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). A court may exercise its discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the case before it. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). For a right to be clearly established under the second prong, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A plaintiff can demonstrate that a constitutional right is clearly established by references to on-point cases from the Supreme Court, the Tenth Circuit, or the clearly established weight of authority from other circuits. *Archuleta*, 523 F.3d at 1283.

On summary judgment, the court must consider the evidence in the light most favorable to the plaintiff when conducting the qualified immunity analysis. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996). If the plaintiff carries his burden on qualified immunity, the burden shifts to the defendant to show that there are no genuine factual issues and he is entitled to judgment as a matter of law. *Albright*, 51 F.3d at 1535.

### III. ANALYSIS

#### A. Count I – Violation of Eighth Amendment

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an

inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[D]eliberate indifference to serious medical needs of prisoners" also violates the Eighth Amendment's proscription of cruel and unusual punishments. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Although prison officials cannot absolutely guarantee the safety of their prisoners, they are responsible for taking reasonable measures to ensure inmate safety. *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir.1999).

"Deliberate indifference has objective and subjective components." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component of the test is met if the harm suffered was sufficiently serious. *Id.* The Tenth Circuit has described the objective component as incarceration under "'conditions posing a substantial risk of serious harm' to inmate health or safety." *DeSpain v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001) (quoting *Farmer*, 511 U.S. at 834).

The subjective component requires a showing that the defendant acted with a culpable state of mind. *See Farmer*, 511 U.S. at 836. In *Farmer v. Brennan*, the Supreme Court observed that the required mens rea lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other . . . ." 511 U.S. at 836. The Court then held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The Court made clear that the defendant's knowledge of a substantial risk may be proven by circumstantial evidence, including evidence "that the risk was obvious." *Id.* at 842. Mere negligence is not enough to constitute deliberate indifference. *Smith v. Cummings*, 445 F.3d

1254, 1258 (10th Cir. 2006).

The record in this case, construed in Plaintiff's favor, satisfies both the objective and subjective components sufficient to survive summary judgment on the Eighth Amendment claim. Leaving Plaintiff in a hot van with no ventilation during a summer day for forty minutes is a condition imposing a serious risk of harm to his health. The record contains evidence that Plaintiff sweated profusely; lost consciousness; suffered seizures or involuntary muscle convulsions; felt dizzy, light-headed, nauseous with a bad headache, and pain in his lower back and wrist caused when he almost fell out of the van; and suffered emotional anguish because he believed he might die. Contrary to Defendants' arguments, this evidence of injury represents more than a hypothetical risk of danger to his safety. Instead, this evidence, if believed by a reasonable jury, would support a finding that the conditions Defendants placed upon Plaintiff posed a substantial risk of serious harm to his health and safety.

Moreover, the evidence construed in Plaintiff's favor shows that Defendants were aware the back of the van lacked air-conditioning and knew that the inmates were hot before they left them in the van to go into PNM North. Plaintiff has provided evidence that the inmates warned Defendant Morgan while they were at PNM South that the temperatures in the back of the van were excessively hot and that they were visibly sweating, yet she ignored their requests to get out of the van, and once they arrived at PNM North, she and Defendant Gonzales left the inmates in the closed van. The risk of danger to a person's health in being trapped in a hot vehicle in the summer, without ventilation, even for a short time, is obvious. A reasonable jury could infer that Defendants knew the inmates faced a substantial risk of harm from the heat and inadequate ventilation and disregarded that risk sufficient to show a violation of the Eighth Amendment.

As for Defendant Morgan's argument that she did not personally participate in any

constitutional violation because she was not present if and when Defendant Gonzales left the inmates in the van without air conditioning, a dispute of fact exists precluding summary judgment on this issue. Plaintiff has submitted admissible evidence that both Defendants went into the PNM North facility at the same time, and thus, Defendant Morgan knew the inmates were left in the back of the van without adequate ventilation and air conditioning. A jury must determine this question of fact regarding Defendant Morgan's personal involvement in the alleged Eighth Amendment violation.

The second prong of the qualified immunity analysis requires Plaintiff to show that Defendants violated a right that was clearly established. At the time of the incident, reasonable corrections officers would have known that confining inmates in an excessively hot van in the summer without adequate air conditioning or ventilation, unnecessarily exposing them to high temperatures, violates their Eighth Amendment rights. *Cf. Hope v. Pelzer*, 536 U.S. 730, 738-46 (2002) (holding it was a clearly established violation of the Eighth Amendment to knowingly tie inmate to hitching post and create substantial risk of physical harm by inflicting unnecessary pain caused by handcuffs and restricted position of confinement for seven–hour period, by unnecessary exposure to heat of sun, to prolonged thirst and taunting, and to deprivation of bathroom breaks that created a risk of particular discomfort and humiliation); *Graves v. Arpaio*, 623 F.3d 1043, 1049 (9th Cir. 2010) (stating that housing pretrial detainees in areas with dangerously high temperatures that pose a significant risk to detainee health violates Eighth Amendment).

Questions of fact exist for resolution by a jury. Defendants are therefore not entitled to qualified immunity or summary judgment on Plaintiff's Eighth Amendment claim.

**B. Count II: Negligent Maintenance of a Motor Vehicle**

Plaintiff asserts in Count II that Defendants breached their duty of care in their operation or maintenance of the transport van by turning off the van, which cut off air supply to the back of the van. *See* Compl. ¶¶ 112-14, ECF No. 1-1. Section 41-4-5 of the New Mexico Tort Claims Act waives state governmental immunity for damages resulting from bodily injury "caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any motor vehicle." N.M. Stat. Ann. § 41-4-5. Maintenance has an "expansive definition" and includes keeping the thing safe for public use. *Armijo v. Department of Health and Environment*, 1989-NMCA-043, ¶ 9, 108 N.M. 616 (citing *Miller v. New Mexico Dep't of Transp.*, 106 N.M. 253, 741 P.2d 1374 (1987)).

Defendant Morgan argues she could not have breached her duty because she was not operating the van when it was turned off. She contends that Defendant Gonzales was driving the van, and she was only maintaining the Transportation Log.

As already discussed, questions of fact exist as to whether both Defendants left the van together to enter the facility and whether Defendant Morgan knew as she left the vehicle that Defendant Gonzales had turned off the van so that there was no air supply into the back of the van, which foreseeably might result in unsafe, excessively high temperatures. Plaintiff has presented sufficient evidence to create a jury question as to whether Defendant Morgan operated or maintained the van in a manner unsafe for the inmates, actions for which immunity has been waived. The Court will therefore deny Defendant Morgan summary judgment on Count II.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Partial Summary Judgment and Memorandum Brief in Support (**ECF No. 63**) is **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**