**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ISAHA CASIAS,

        **Plaintiff,**

v.                                    **No. Civ. 16-cv-56 JCH/SCY**

STATE OF NEW MEXICO DEPARTMENT
OF CORRECTIONS; TARACINA MORGAN; and
HERMAN GONZALES,

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the following motions: (i) Defendants' Motion in Limine to Exclude Photographic and/or Video Trial Exhibits (ECF No. 125); (ii) Defendants' Motion in Limine to Limit Needlessly Cumulative Testimony by Plaintiff's Witnesses (ECF No. 127); (iii) Plaintiff's Motion in Limine No. II: Allow Evidence of Destruction of Evidence by Defendants Including Jury Instruction on the Destroyed Evidence or in the Alternative a Renewal of Plaintiff's Motion for Sanctions Up To and Including Default (ECF No. 130); (iv) Plaintiff's Motion in Limine No. III: To Bar the Admission of Certain Deposition Testimony by Dr. Kimberly Birch (ECF No. 133); and (v) Plaintiff's Motion in Limine No. IV: To Exclude Evidence of Crimes and Other Bad Acts (ECF No. 134). The Court, having considered the motions, briefs, arguments, evidence, relevant law, and otherwise being fully advised, rules on the motions as described herein.

### I.      BACKGROUND

This case arises from the transportation by Defendants of inmates on July 11, 2013. Plaintiff alleges that while at the Penitentiary of New Mexico North ("PNM North") State

Department of Corrections ("DOC") Officers Taracina Morgan and Herman Gonzales turned off the transport van, entered the facility, and left the inmates in the back of the windowless van without air conditioning for approximately 30 to 40 minutes. *See* Pretrial Order 7, ECF No. 121. Plaintiff contends that, as a result of the heat, he felt like he was going to die, he lost consciousness, and he had what appeared to be a seizure. *Id.* 7-8. Medical staff, including Dr. Kimberly Birch, who worked in the Health Care Unit responded and evaluated the inmates. *See id.* 8-9. Defendants dispute many of these allegations, including the length of time the inmates were left unattended in the van and whether any inmates were seizing. *See id.* 9-10.

## II.  MOTIONS IN LIMINE

### A.  Defendants' Motion in Limine to Exclude Photographic and/or Video Trial Exhibits (ECF No. 125)

On October 17, 2016, counsel toured the sally port area at PNM North during which a photographer hired by Plaintiff took photographs and video. Defendants object to the introduction of the photographs on the basis that the security cameras depicted in the sally port area on the date the photographs were taken are not the same as what existed on July 11, 2013. Defendants argue that Plaintiff cannot meet the authentication requirements of Federal Rule of Evidence 901(a) because the photographed scene does not fairly and accurately depict the scene at the time of the incident. They also contend that the prejudicial effect outweighs their probative value under Rule 403.

Plaintiff disputes that there were no video cameras in the sally port area on the date of the incident. Regardless of that fact issue, Plaintiff contends that the photos and video as a whole are a fair and accurate representation of the scene of the incident and will enable the jury to see and evaluate the conditions where the incident in the van occurred, such as the direct sunlight, lack of shade, and the pavement reflecting the heat.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed.R.Evid. 901(a). "[E]ven if the conditions have changed, the photograph may still be admitted at the discretion of the court if the changes are explained and the jury will not be misled." *Newill v. Campbell Transp. Co. Inc.*, No. 2:12-cv-1344, 2015 WL 222438, at *4 (W.D. Penn. Jan. 14, 2015) (unpublished) (quoting 5 Federal Evidence § 9:23).

The photographic evidence is relevant to the case to assist the jury in visualizing the scene of the incident. Defendants can probe through cross examination any differences between how the area looked at the time of the incident and how the area looks in the photographs. Those issues go to the weight and credibility of the evidence, rather than its admissibility. Moreover, as discussed *infra*, the Court will permit Plaintiff to question witnesses concerning the video camera evidence and the reasons why video evidence from inside the sally port area on the date in question may not be presented at trial. Subject to a proper foundation being laid at trial, the Court will not exclude the photographic evidence and will deny Defendants' motion in limine. This ruling does not preclude Defendants from raising any objections at trial to proper foundation and relevance.

Defendants also raise an issue in their reply about the relevance of photographs of holding cells inside PNM North. Without the benefit of the evidence at trial or argument by Plaintiff, the Court is unable to determine the relevance of those photographs. The Court will reserve ruling on the admissibility of the holding cell photographs until trial.

**B. Defendants' Motion in Limine to Limit Needlessly Cumulative Testimony by Plaintiff's Witnesses (ECF No. 127)**

Relying on Rule 403, Defendants contend that the Court should exclude needlessly cumulative evidence, noting that Plaintiff has listed nine witnesses to discuss the incident in the

van and six people to testify about Plaintiff's psychological and emotional distress damages. Plaintiff asserts that Defendants have contested most aspects of Plaintiff's account of the incident, so the numerous witnesses are critical to support Plaintiff's claims. Plaintiff asserts that his experts should be permitted to testify to his damages. He also listed three family members, each with unique testimony, about the emotional and psychological trauma Plaintiff has suffered from the incident, but whose combined testimony is no longer than one hour.

Rule 403 allows a court to exclude relevant evidence if its probative value is substantially outweighed by the danger of needlessly presenting cumulative evidence. At this stage, the Court will deny Defendants' motion, but cautions all parties to exercise diligence in the efficient presentation of the evidence to avoid the waste of judicial resources and in recognition of the jury's time. The Court will take up any specific objections to cumulative evidence at trial.

### C. Plaintiff's Motion in Limine No. II: Allow Evidence of Destruction of Evidence by Defendants Including a Jury Instruction on the Destroyed Evidence or in the Alternative a Renewal of Plaintiff's Motion for Sanctions up to and Including Dismissal (ECF No. 130)

In a Memorandum Opinion and Order filed on February 7, 2017, the Honorable Steven C. Yarbrough found that Defendants committed a number of discovery violations during the litigation of this case, and he imposed sanctions. *See* Mem. Op. and Order 1, 22-25, ECF No. 86. As relevant here, an issue arose about whether a video camera was located inside the sally port area that would have captured the incident. *Id.* at 13. Judge Yarbrough found that a camera did exist in the location, but Defendants did not collect video footage from the camera, and he could not determine whether relevant video footage from the camera ever existed. *Id.* at 13-14. Judge Yarbrough noted that DOC knew at the time that litigation might ensue and should have immediately checked the cameras to preserve any evidence. *Id.* at 14. He stated that "[t]hese facts provide Plaintiff with an argument that the presiding judge should exercise her discretion to

allow him to cross examine Defendant DOC witnesses about this failure." *Id.* Judge Yarbrough left open the issue of trial sanctions in the form of latitude at trial to examine witnesses regarding the failure to check or preserve evidence from the video cameras and/or instructions to the jury for the presiding judge to determine. *Id.* at 23.

Plaintiff's Motion in Limine No. II requests this Court to rule on the appropriate sanction to impose as a result of Defendants' failure to preserve the video camera evidence. Plaintiff asserts that following Judge Yarbrough's ruling, Deputy Warden Derek Williams, the author of the Office of Professional Standards ("OPS") Report, revealed in his deposition that both the video evidence from inside the sally port and the contemporaneous medical records were preserved by DOC pursuant to the OPS investigation of the July 11, 2013 van incident, and the loss for which DOC, not a third party, is culpable. *See* Pl.'s Mot. in Limine No. II 3-5, ECF No. 130. Plaintiff renews his motion for default judgment against Defendant DOC on Count II of the Complaint as a sanction, arguing that the new evidence makes DOC's actions even more egregious. Alternatively, Plaintiff requests as a lesser sanction a jury instruction giving an adverse inference regarding the lost evidence.

A district court has discretion to impose judgment as a sanction for failure to follow discovery orders. Fed. R. Civ. P. 37(b)(2)(A)(vi). Final disposition of a party's claim, however, "is a severe sanction reserved for the extreme case, and is only appropriate where a lesser sanction would not serve the ends of justice." *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (quoting *Hancock v. City of Oklahoma City*, 857 F.2d 1394, 1396 (10th Cir. 1988)). A court must consider a number of factors before entering default judgment as a sanction: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the party; and (4) whether a lesser sanction would serve the ends of

justice. *See id.* Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits should a court enter judgment against a party as a sanction. *Id.*

The evidence before this Court shows that a new camera system was put in place after this incident, but at the time of the incident, there was an "old-system" video camera in place that would have shown the sally port area. *See* Aff. of Daniel Salazar ¶¶ 7-8 & Ex. G-1, ECF No. 155-1. It remains unclear whether that video camera was operational and recorded the inside of the sally port on the day in question. Derek Williams avers in his Affidavit that he took the relevant video footage available, which was only from the pole-mounted camera outside the sally port, and secured it. Aff. of Derek Williams ¶ 6, ECF No. 155-3. In his deposition, however, he did not remember exactly which footage he preserved, and he explained that if he had seen video footage of the relevant incident, he would have included a reference to the video proof in his report. *See* Williams Dep. 52:13-19, 53:5-12, 59:10-16, ECF No. 155-5. He also testified that he generally would have downloaded the video by dragging a digital computer file and burning a CD. *See* Williams Dep. 64:22-66:10, ECF No. 130-1. He never testified to taking a hand-held video camera and recording a computer screen, yet the video evidence provided Plaintiff in discovery looks to have been created in this manner. *See* Pl.'s Ex. 3, ECF No. 131. Defendants have failed to offer an explanation of why the video provided does not fit Derek Williams's description of how he would have preserved a video and why the video looks as if it is from a hand-held camera filming a computer screen.

Having reviewed the record, the Court is not convinced that Defendant DOC destroyed any relevant video footage from inside the sally port area in bad faith. There is not conclusive evidence establishing that a second sally port video camera was operational and recorded footage

of the incident in question. Nor is this Court convinced by the record that DOC acted in bad faith with respect to the medical record evidence. The Court, having considered all the evidence submitted by the parties supporting or refuting Plaintiff's renewed motion for sanctions, finds that Judge Yarbrough's well-reasoned and thorough analysis continues to apply to the current record and adopts his conclusions that default judgment is too severe a sanction under the circumstances. *See* Mem. Op. and Order 17-23, ECF No. 86. For the same reasons, the Court will not issue an adverse inference instruction.

Nevertheless, Defendants' discovery violations have been "serious." *Id.* at 21-22. Their lack of diligence and explanation continue to create more questions than answers surrounding the evidence. For example, the lack of explanation for why the video evidence looks to be from a hand-held camera is concerning. The Court agrees with Plaintiff that the presence of video cameras is relevant to the case and to the jury's consideration of the factual issues, and will permit Plaintiff to question witnesses concerning the video camera evidence and the reasons why video evidence from inside the sally port area will not be presented at trial. The Court will also allow examination of witnesses concerning DOC's failure to preserve the original medical records. Accordingly, the Court will give an instruction that allows the jury to make any inference they believe appropriate in light of the evidence regarding the video cameras and the failure to preserve the original medical records. The parties should confer and craft a stipulated jury instruction, if possible, on this issue and submit it to the Court when the parties submit their draft jury instructions. If the parties cannot agree, they should submit separate instructions for the Court's consideration. *Cf. Browder v. City of Albuquerque*, 187 F.Supp.3d 1288, 1300 (D.N.M. 2016) (J. Brack) ("Because the Court has found gross negligence, rather than bad faith, on the part of the City, it finds that a jury instruction requiring an adverse inference would be

inappropriate. However, the Court will give an instruction that allows the jury to make any inference they believe appropriate in light of the spoliation. The Court leaves it to counsel to craft a jury instruction they can agree on. Failing agreement, the Court will craft its own such instruction…").

Additionally, these evidentiary issues make the testimony of Derek Williams concerning his findings and conclusions highly probative. Because it is not conclusive as to which video evidence Derek Williams relied upon in finding that both Defendants Morgan and Gonzales violated administrative policies, Plaintiff should be able to question Mr. Williams regarding what he found and concluded and upon which evidence he collected and relied in forming his conclusions. This inquiry will require explanations of the process he used to make his findings, which is now a necessary component of the case because of DOC's loss of relevant evidence and will not be a waste of time on tangential issues. The Court acknowledges the dangers of a jury concluding that if an experienced deputy warden found a violation of policies, then Defendants must also have violated legal requirements, and of the jury merely adopting Mr. Williams's conclusions rather than coming to its own independent conclusion after hearing the evidence at trial. This danger may be mitigated, however, through carefully worded jury instructions given both at the time of Mr. Williams's testimony and in the Court's final instructions. For example, the Court could instruct the jury to exercise its independent judgment based on the legal standards that must be applied at trial and the totality of the evidence admitted at trial, standards that differ from the administrative standards and evidence upon which Mr. Williams relied. The parties' proposed jury instructions should include a stipulated instruction to give to the jury to mitigate this danger.

In sum, the admission of evidence concerning the history surrounding the collection and

preservation, or lack thereof, of video camera evidence and the medical records is necessary to mitigate the impact of Defendants' discovery violations. The probative value of the evidence outweighs its prejudicial effect. For the foregoing reasons, the Court will permit the admission of evidence of the contents of the OPS Report during the examination of Mr. Williams. *Cf. Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1344-47 (3d Cir. 2002) (holding that, despite presumption of admissibility under Rule 803(8)(C), trial court must make case-by-case decision under Rule 403 of whether EEOC determination letter is more probative than prejudicial, considering factors such as undue delay, waste of time, or needless presentation of evidence). The Court, however, will reserve ruling on the admission of the OPS Report itself until trial in order to determine if the evidentiary foundations can be satisfied for admissibility under a hearsay exception. *Cf. Daniel v. Cook County*, 833 F.3d 728, 739-42 (7th Cir. 2016) (concluding that Department of Justice investigative report fell within Rule 803(8)(A)(iii) hearsay exception because it combined third-party statements from jail staff, medical professionals, and inmates with investigator's on-scene observations from jail visits and collaboration with consultants, and made conclusions based on sum of evidence). Consequently, the Court will grant Plaintiff's request for sanctions in part.

### D. Plaintiff's Motion in Limine No. III: To Bar the Admission of Certain Deposition Testimony by Dr. Kimberly Birch (ECF No. 133)

Defendants identified Dr. Kimberly Birch as a witness with knowledge of Plaintiff's medical claims. Joint Status Report 15, ECF No. 13. Prior to her deposition, Defendants provided a statement prepared by Dr. Birch regarding the incident, in which she described her role in the events and stated, among other things, that two individuals were being carried/helped out of the van, and they "were stuporous and exhibited 'jerky movements,' but were not seizing." Defs.' Ex. A, ECF No. 156-1. According to Defendants, the parties stipulated to conducting a

trial deposition of Dr. Birch, because she resides out of state. Def.'s Resp. 2, ECF No. 156. Plaintiff deposed Dr. Birch via Skype on November 28, 2016. *See* Birch Dep., ECF No. 133-1.

Following the deposition, Defendants disclosed the existence of a "replacement record," that indicated prior medical records were lost and the report by Dr. Birch was "redone 8-17-13." Pl.'s Ex. 4, ECF No. 133-4. Defendants also disclosed after her deposition a DOC recorded interview with Dr. Birch concerning her observations during the incident conducted by Deputy Warden Derek Williams during his OPS investigation. *See* Pl.'s Ex. 5, ECF No. 133-5. In the Pretrial Order filed on October 17, 2017, Defendants stated that Dr. Birch would testify by deposition regarding the incident, including "her opinion regarding plaintiff's medical condition, and her authorization to allow plaintiff and others to continue on the transport van." Pretrial Order 19, ECF No. 121.

On October 23, 2017, Plaintiff filed a motion in limine (ECF No. 133) seeking the exclusion of certain deposition testimony by Dr. Birch. Although Plaintiff noted that some of Dr. Birch's deposition testimony is favorable to his case, he seeks to exclude her medical opinions that go beyond the facts of the treatment administered, because Defendants did not disclose an expert report under Rule 26(a)(2)(A) and Defendants belatedly disclosed discovery pertinent to Dr. Birch's testimony. Specifically, Plaintiff seeks to bar Dr. Birch's testimony regarding (i) her medical opinion that Plaintiff did not have a seizure at the scene, (ii) whether Plaintiff or other inmates exhibited any symptoms caused by a lack of oxygen, (iii) her opinion that Plaintiff suffered from heat exhaustion rather than heat stroke, and (iv) whether Plaintiff's vital signs were normal or abnormal. Pl.'s Mot. in Limine III 4, ECF No. 133. Plaintiff also moves to exclude Dr. Birch's testimony concerning the time of the incident and that some inmates begged to get back on the van as inadmissible hearsay.

The Court subsequently continued trial. Since the rescheduling of the trial, counsel for the parties have stipulated to conducting a videotaped trial deposition of Dr. Birch. Defs.' Resp. 2, ECF No. 156. Defendants acknowledge that documents that directly impact Dr. Birch's testimony were produced after her deposition, but contend that the second deposition will cure any prejudice from the belated disclosure. Defendants argue that Dr. Birch can give medical opinions arising from her treatment of Plaintiff and that her testimony concerning the time of day and statements by inmates fall within the business record exception and the then-existing state of mind exception, respectively, to the hearsay rule. The Court will examine the issues in turn.

### 1. Medical Opinions

According to Federal Rule of Civil Procedure 26, a party who intends to present expert testimony must disclose the identity of any such witness to all other parties. Fed. R. Civ. P. 26(a)(2)(A). If the expert witness is "retained or specifically employed to provide expert testimony in the case" a written report must be provided. Fed. R. Civ. P. 26(a)(2)(B). If, however, the expert witness is not required to provide a written report, the party calling the witness must produce a disclosure containing "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). The purpose of requiring only a summary arises from the common-sense acknowledgment that witnesses who are not specially retained "may not be as responsive to counsel as those who have." Fed. R. Civ. P. 26 advisory committee notes, 2010 amendments.

The July 18, 2013 report disclosed by Defendants (ECF No. 156-1) provided Plaintiff with sufficient information on the subject matter of Dr. Birch's testimony and a summary of the facts and opinions to which Dr. Birch would testify to give Plaintiff notice that she would offer

opinions as a treating physician. Defendants therefore satisfied their disclosure obligations under Rule 26(a)(2)(C). The cases Plaintiff cites to support his argument that a treating physician must provide an expert report to give any medical opinions predate the 2010 Amendment to the rules, the committee comment to which clarifies that they added Subdivision (a)(2)(C) to resolve a "tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempted from the report requirement." Fed. R. Civ. P. 26 advisory committee notes, 2010 amendments. The committee further stated that witnesses disclosed under Rule 26(a)(2)(C), in particular treating physicians, "may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705." *Id.* Moreover, many of the cases cited by Plaintiff are distinguishable in that the courts limited the testimony to lay opinion because the party had not adequately or timely disclosed that the witness would offer expert testimony in addition to lay testimony. *See*, *e.g.*, *Montoya v. Sheldon*, 286 F.R.D. 602, 613 (D.N.M. 2012) (ruling that, because plaintiffs failed to timely disclose doctor as expert witness, doctor could testify only about her treatment of plaintiff as a lay witness).

A treating physician is permitted to testify as to facts and opinions, including causation of an injury to a patient and the prognosis of the condition, so long as the opinion was formed during the course of care and treatment of the patient. *Farris v. Intel Corp.*, 493 F.Supp.2d 1174, 1180 (D.N.M. 2007). Such expert testimony is limited to the personal knowledge and observations obtained during the course of care of the patient, so a treating physician cannot provide expert testimony regarding opinions formed based on information learned outside of the treatment. *Id.* In this case, Defendants timely disclosed Dr. Birch as a treating physician with both fact testimony and expert testimony arising from her treatment of Plaintiff. The four opinions of Dr. Birch that Plaintiff seeks to exclude are those based on her own diagnosis and

treatment of Plaintiff, and thus, are permitted under Rules 26(a)(2)(C), 702, 703, and 705.

With regard to the belated disclosure of documents, Defendants admit they were late but note that the parties have since stipulated to a videotaped deposition for trial of Dr. Birch during which Plaintiff will have an opportunity to address issues arising from the documents. Trial has been postponed and the parties should have sufficient time to conduct the videotaped deposition. So long as Plaintiff has another opportunity to depose Dr. Birch, the Court finds this issue of belated disclosure moot.

Finally, Plaintiff argues that the vitals and other medical notes on which Dr. Birch based her opinions have never been produced, and consequently her opinions should be excluded. The Court finds that the failure to produce the medical notes is a subject ripe for cross examination, but the Court will not use the drastic remedy of wholesale exclusion of her testimony.

### 2.  Testimony Concerning Time of Day

Dr. Birch testified in her deposition that the time of 12:40 she reported in her medical record was based on conversations with others, not on having looked at her watch. *See* Birch Dep. 35:5-21, ECF No. 133-1. Plaintiff contends that Dr. Birch's testimony concerning the time is inadmissible hearsay, unreliable, and should be excluded under Federal Rules of Evidence 801 and 802. Defendants respond that the time is reflected in her report, which is a Record of a Regularly Conducted Activity under Rule 803(6). A business record is excluded from the hearsay rule only if certain conditions are met, including that "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E).

Even assuming that a record falls within Rule 803(6), double hearsay within a business record may be excluded. *See United States Blechman*, 657 F.3d 1052, 1065 (10th Cir. 2011)

(explaining double hearsay in context of business record and noting that reliability rationale underlying business records exception may fail if any participants lack business duty to provide accurate information, indicating a lack of trustworthiness in chain); *United States v. Gwathney*, 465 F.3d 1133, 1141-42 (10th Cir. 2006) (citing with approval *United States v. McIntyre*, 997 F.2d 687, 700 (10th Cir. 1993), for "holding hearsay imbedded in a business record may be admissible only where information is trustworthy, such as where the preparer of the document checked the accuracy of the information"); *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991) (explaining that all levels of hearsay must satisfy exception to hearsay requirements before statements are admissible). "If both the source and the recorder of the information, as well as every other participant in the chain producing the record, are acting in the regular course of business, the multiple hearsay is excused by Rule 803(6)." *Wilson*, 939 F.2d at 271.

It does not appear that Dr. Birch can testify with personal knowledge as to the accuracy of the time she recorded, so her statement of the time of day in her report constitutes hearsay. However, if her source of the time was another employee with a duty to accurately record the time and that person was acting in the regular course of business, the statement may fall within the business record exception. *See Wilson*, 939 F.2d at 271. The record at this time is insufficient to determine all the foundational elements required for Rule 803(6), so the Court will reserve ruling on this issue until trial.

### 3. Testimony Concerning Inmates' Pleas

Additionally, Dr. Birch testified in her deposition that she recommended that two inmates stay for observation, their vital signs were stable, and "they were begging me to go on to their final destinations." Birch Dep. 18:1-7, ECF No. 133-1. Plaintiff argues that Dr. Birch did not

know if Plaintiff was one of the "begging" inmates, so her testimony is hearsay, more prejudicial than probative, and should be excluded under Rules 801, 802, and 403. Defendants assert that the statement is admissible under Rule 803(3) as a statement of a then-existing state of mind, emotional, or physical condition, and is relevant to explain why the inmates got back into the van for their final destination. The Court is not yet convinced of the relevance of the statement and will need the context of evidence at trial to make a determination. Accordingly, the Court will reserve ruling on the admissibility of this statement until trial.

### E. Plaintiff's Motion in Limine No. IV: To Exclude Evidence of Crimes and Other Bad Acts (ECF No. 134)

Plaintiff seeks to exclude evidence of his criminal history and various other bad acts. Defendants are not seeking to admit evidence of Plaintiff's juvenile arrests or adjudication, so the request to exclude that evidence is moot. Defendants, however, wish to present evidence of the following: (1) Plaintiff's prior and subsequent criminal history, to the extent it is relevant to the degree of emotional distress Plaintiff claims to have suffered from the July 11, 2013 incident; (2) Plaintiff's description of treatment in an Arkansas prison while incarcerated, described in his medical records, as relevant to his claim of emotional distress/PTSD; (3) the criminal conviction that led to his incarceration in 2013; (4) his 2003 conviction for two counts of forgery; and (5) misconduct that occurred in prison after the incident.

Rule 404(b) prohibits the admission of evidence of crimes, wrongs, or other acts to prove a person's character to show action that conforms to that character, but it allows evidence of other bad acts if admissible for other purposes. *See* Fed. R. Evid. 404(b). A court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice. Fed. R. Evid. 403. A party in a civil case may attack a witness's character for truthfulness by evidence of a criminal conviction punishable by imprisonment for more than one

year. Fed. R. Evid. 609(a)(1). Such evidence "must be admitted, subject to Rule 403, in a civil case." Fed. R. Evid. 609(a)(1)(A). For crimes punishable by less than a year imprisonment, evidence is admissible if the elements for the crime require proving a dishonest act or false statement. Fed. R. Evid. 609(a)(2).

### 1. Prior and subsequent criminal history

Defendants argue that Plaintiff's criminal history is relevant to damages, and they should be permitted to confirm whether he was arrested on particular dates, if he was incarcerated, and for how long. They assert they will not inquire about the nature of the crimes with the exception of the forgery conviction.

In support of their damages argument, Defendants cite Section 1983 cases involving false imprisonment or excessive force claims. *See*, *e.g.*, *Green v. Baca*, 226 F.R.D. 624, 656-57 (C.D. Cal. 2005). When a person is claiming emotional distress from wrongful incarceration, evidence the person has been incarcerated numerous times is relevant to the extent of his damages, although the nature of the convictions may not be relevant and may be more prejudicial than probative. *See id.* at 657. The emotional distress for someone who has never experienced incarceration could be of a greater degree than that for someone more familiar with jail. *See id.*

In this case, however, Plaintiff's alleged damages flow not from his incarceration *per se*, but from being confined in the back of a hot van. The jury will already know that Plaintiff was incarcerated by the nature of his claims and the facts of the case. Indeed, Plaintiff has conceded that "Defendants may present evidence concerning the fact that he was convicted of felony charges in 2013 that landed him in prison, because the jury will necessarily hear evidence that Plaintiff was serving a sentence of imprisonment in the Department of Corrections on the date of incident." Pl.'s Mot. in Limine No. IV at 4, ECF No. 134. Without additional information tying a

particular criminal conviction or incarceration to Plaintiff's purported emotional distress, the Court finds that Plaintiff's prior criminal history is not sufficiently relevant to his degree of distress to overcome the highly prejudicial effect of the evidence to justify its admission on the issue of damages. *Cf. Nelson v. City of Chicago*, 810 F.3d 1061, 1068-70 (7th Cir. 2016) (holding district court erroneously admitted in false arrest case evidence of plaintiff's numerous other arrests because risk of prejudice was enormous and his arrest history had little probative value on question of damages where arrests were distant in time, plaintiff carefully limited claimed emotional injury to fear he felt during 30 minutes of traffic stop, and he never claimed experience left him fearful of police more generally).

Moreover, even if Plaintiff testifies, the Court is not convinced at this time that the number and nature of past convictions is sufficiently relevant for impeachment purposes to overcome its highly prejudicial effect under Rule 403. Absent a showing at trial of a stronger connection of the fact of a certain conviction or length of incarceration to the nature of Plaintiff's asserted emotional distress, the Court will grant Plaintiff's motion to exclude reference to his criminal history, with the exception of the fact of the 2013 felony conviction, under Rule 403.

## 2. Evidence of pre-existing emotional distress

According to Defendants, medical records from April 12, 2013, indicate a self-report from Plaintiff of a diagnosis of Post-Traumatic Stress Disorder ("PTSD") in 2007. Defendants assert that Plaintiff's records also indicate that he was a member of a gang, he was tortured in an Arkansas prison, and in April 2013 he was experiencing the symptoms of a major depressive episode. Defendants contend this evidence is relevant to his pre-existing condition and affects the degree of damages. Plaintiff asserts that the suggestion that Plaintiff suffers from pre-existing PTSD is unsupported by the record and irrelevant.

As to Defendants' request to admit evidence that Plaintiff was a member of a gang, based on the current record, Plaintiff's gang affiliation appears more prejudicial than probative on the issue of damages and the Court will likely exclude it. If there is an evidentiary basis supporting that Plaintiff made a self-report of PTSD prior to the incident, that he suffered severe emotional distress from a past incident of physical torture, or that he had experienced major depression in 2013, that evidence may be relevant to the degree of Plaintiff's emotional distress arising from this incident or whether his emotional damages pre-existed this incident. *Cf. York v. American Tel. & Tel. Co.*, 95 F.3d 948, 957-58 (10th Cir. 1996) (holding that because plaintiff raised a claim of emotional distress, it was entirely appropriate for court to allow defendants to introduce evidence of alternate or multiple causes of such distress, including past hospitalization in a psychiatric facility and divorce proceedings); *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992) ("And because Hancock placed her mental condition in issue with her claim for damages, we conclude that the district court did not abuse its discretion in admitting her prior psychiatric treatment into evidence under Rule 403."), *partially abrogated on other grounds by Jaffee v. Redmond*, 518 U.S. 1 (1996)). Plaintiff, however, argues that there is no expert evidence indicating that he is demonstrating symptoms related to an Arkansas incident or that Plaintiff self-reported a PTSD diagnosis in 2007. The Court finds that it does not have a sufficient record at this time to determine whether the relevance of the contested evidence outweighs any prejudicial effect and will reserve ruling for trial.

### 3. Forgery Conviction

Defendants argue that, should Plaintiff testify, they can impeach him with evidence of his prior criminal conviction after a plea of guilty for two counts of Forgery (Making and Altering) under Federal Rule of Evidence 609. Plaintiff argues that his guilty plea to conspiracy to commit

forgery and his sentence to probation occurred in 2003, fifteen years ago and outside the ten-year limit for the use of such evidence. Under Rule 609(b), if more than ten years have passed since the witness's conviction or release from confinement, the evidence is admissible only if its probative value substantially outweighs its prejudicial effect and the proponent gives written notice of the intent to use it. Fed. R. Evid. 609(b)(1) & (2). At this stage, based on the limited record bereft of a factual basis for the underlying conviction or of the underlying statute of conviction showing the elements of the crime, Defendants have not met their burden of convincing the Court that the probative value of the evidence outweighs its prejudicial effect. Accordingly, at this point, the Court will grant Plaintiff's request to exclude evidence of Plaintiff's forgery conviction.

### 4. May 2014 Prison Misconduct

Plaintiff alleges he suffered from "severe wrist and back pain" from the incident at issue. Compl. ¶ 93, ECF No. 1-1. Defendants assert that in April 2014 Plaintiff was involved in an inmate-on-inmate assault during which he was observed on the camera monitoring system punching and kicking another inmate and for which he was found guilty of a misconduct report for Assault or Battery without a Weapon. Defendants contend that they are entitled to ask Plaintiff about the altercation involving him punching and kicking, despite having allegations of wrist and back pain. Defendants have not produced any medical records arising from the incident to indicate that Plaintiff sustained wrist or back injuries during the 2014 altercation. The nature of the incident is highly inflammatory. At this point, the Court finds that the probative nature of Plaintiff's ability to use his wrists while punching and his back while kicking during the incident is not significant enough to overcome its substantial prejudicial effect and will exclude evidence of the May 2014 altercation.

**IT IS THEREFORE ORDERED** that:

1. Defendants' Motion in Limine to Exclude Photographic and/or Video Trial Exhibits (**ECF No. 125**) is **DENIED** as to the photographs and video evidence of the sally port area. The Court, however, will **RESERVE RULING** until trial on the admissibility of the photographs of the holding cells.

2. Defendants' Motion in Limine to Limit Needlessly Cumulative Testimony by Plaintiff's Witnesses (**ECF No. 127**) is **DENIED** at this time.

3. Plaintiff's Motion in Limine No. II: Allow Evidence of Destruction of Evidence by Defendants Including Jury Instruction on the Destroyed Evidence or in the Alternative a Renewal of Plaintiff's Motion for Sanctions Up To and Including Default (**ECF No. 130**) is **GRANTED IN PART AND DENIED IN PART** as follows:

   a. The Court will **GRANT** Plaintiff's request to examine witnesses concerning the history surrounding the preservation and collection, or failures thereof, of video and medical record evidence, and will **GRANT** Plaintiff's request for a jury instruction on this issue. The parties must submit a proposed jury instruction regarding this issue to the Court, as described herein and in accordance with the Court's deadline for submission of jury instructions.

   b. The Court will also **GRANT** as a lesser sanction the examination of Deputy Warden Derek Williams concerning the contents of his OPS Report, subject to the conditions described herein.

   c. Plaintiff's request for greater sanctions is otherwise **DENIED**.

4. Plaintiff's Motion in Limine No. III: To Bar the Admission of Certain Deposition

Testimony by Dr. Kimberly Birch (**ECF No. 133**) is **DENIED IN PART** as follows:

    a. The Court **DENIES** Plaintiff's request to exclude Dr. Birch's medical opinions, so long as Plaintiff has an opportunity to re-depose Dr. Birch as the parties have previously stipulated.

    b. The Court **RESERVES RULING** on Plaintiff's request to exclude Dr. Birch's testimony concerning the time of day and the inmates' pleas to get back into the van.

5. Plaintiff's Motion in Limine No. IV: To Exclude Evidence of Crimes and Other Bad Acts (**ECF No. 134**) is **GRANTED IN PART AND DENIED IN PART** as follows:

    a. The Court **GRANTS** at this time Plaintiff's request to exclude evidence of the number and nature of past criminal convictions, except for the fact that at the time of the incident at issue in this case, Plaintiff was incarcerated for a 2013 felony conviction. The nature of that conviction will be excluded.

    b. The Court **GRANTS** Plaintiff's request to exclude evidence of his gang affiliation and the May 2014 altercation.

    c. The Court **RESERVES RULING** on the remaining evidentiary issues set forth in the motion until trial.

_____

**UNITED STATES DISTRICT JUDGE**