IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ISAHA CASIAS,

        Plaintiff,

v.                                                              1:16-CV-00056-JMC-SCY

STATE OF NEW MEXICO DEPARTMENT
OF CORRECTIONS, TARACINA MORGAN
and HERMAN GONZALES,

        Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION TO ALTER OR AMEND THE JUDGMENT

This matter comes before the Court on Defendants' Motion for Judgment as a Matter of Law and Motion to Alter or Amend the Judgment (Doc. 226). Pursuant to Federal Rule of Civil Procedure ("Rule") 50(b), Defendants move to vacate the judgment against them and enter judgment in their favor on the issue of deliberate indifference. Defendants also move to alter or amend the judgment with respect to Plaintiff's award of compensatory and punitive damages. Having reviewed the evidence and the relevant law, the Court denies Defendants' motions.

I.

Plaintiff Isaha Casias brought this civil rights lawsuit alleging state law negligence and Eighth Amendment constitutional violations under 42 U.S.C. § 1983 against the State of New Mexico Department of Corrections ("NMDC") and two individual NMDC transport officers, Taracina Morgan and Herman Gonzales. On July 11, 2013, Morgan and Gonzales transported Plaintiff between prisons. During the transport, Morgan and Gonzales left the van unattended with the van's engine turned off, and the windows and doors closed. The heat caused Plaintiff to lose consciousness and convulse with uncontrollable muscle spasms. Plaintiff sought

compensatory damages for pain and suffering. He also sought punitive damages against the individual defendants.

In April 2019, the Court held a four-day jury trial. At the close of Plaintiff's case, Defendants moved for judgment as a matter of law ("JMOL") pursuant to Rule 50(a) on the issues of negligence and deliberate indifference. The Court denied Defendants' motion. At the close of Defendants' case, Defendants again moved for JMOL on the same grounds. The Court again denied Defendants' motion.

The jury returned a verdict in favor of Plaintiff. The jury specifically found that Plaintiff's confinement in the van on the date in question "posed a substantial risk of serious harm to his health and safety." Doc. 221. The jury found that each defendant acted with deliberate indifference to that substantial risk of harm. *Id.* And the jury found that each defendant's acts or omissions caused Plaintiff to suffer damages. *Id.* The jury awarded Plaintiff $1,000,000 in compensatory damages against Defendants, jointly and severally, and $500,000 in punitive damages against each individual defendant.

On April 12, 2019, the Court entered Judgment on the Jury Verdict ("Judgment") (Doc. 223). On May 9, 2019, Defendants renewed their motion for JMOL on the issue of deliberate indifference and filed a motion to alter or amend the judgment based on Plaintiff's damages award. Doc. 226.

II.

A motion for judgment as a matter of law may be made at any time before a case is submitted to a jury. Fed. R. Civ. P. 50(a). The party seeking JMOL must state specific grounds for its motion. *Id.* Where the pre-verdict motion was not granted, it may be renewed after trial by written motion within 28 days of the entry of judgment. Fed. R. Civ. P. 50(b). The renewed

motion for JMOL is limited to those specific grounds raised in the Rule 50(a) motion. *Marshall v. Columbia Lea Reg'l Hosp.*, 474 F.3d 733, 738–39 (10th Cir. 2007). When considering a renewed motion for JMOL following a jury verdict, a court may allow the judgment to stand, order a new trial, or direct entry of judgment as a matter of law. *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 400 (2006) (quoting Fed. R. Civ. P. 50(b)).

The burden on a party seeking judgment as a matter of law is high; JMOL "should be cautiously and sparingly granted." *Zuchel v. Denver*, 997 F.2d 730, 734 (10th Cir. 1993) (quoting *Black, Sivalls & Bryson, Inc. v. Keystone Steel Fabricating Inc.*, 584 F.2d 946, 951 (10th Cir. 1978)). The court "do[es] not weigh the evidence, pass on the credibility of the witnesses, or substitute [its] conclusions for that of the jury." *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1546 (10th Cir. 1996). Rather, a party is entitled to JMOL "if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." *Johnson v. Unified Gov't of Wyandotte Cnty.*, 371 F.3d 723, 728 (10th Cir. 2004) (quoting *Brown v. Gray*, 227 F.3d 1278, 1285 (10th Cir. 2000)).

Defendants claim Plaintiff presented insufficient evidence at trial to demonstrate that the individual defendants had the requisite subjective intent for Eighth Amendment liability. The Court disagrees. The evidence supports the jury's finding that the individual defendants were deliberately indifferent to a substantial risk of serious harm to Plaintiff.

Under the Eighth Amendment, prison officials are required to provide inmates humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This includes taking "reasonable measures to guarantee the safety of the inmates." *Id.*; *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999). But that does not mean that every injury suffered by a prisoner leads to constitutional liability for the prison official tasked with maintaining the prisoner's safety.

Rather, constitutional liability arises when both an objective and subjective standard are met. *Farmer*, 511 U.S. at 832. First, there must be an objectively serious deprivation, such as conditions posing a substantial risk of serious harm. *Id.* Second, the subjective standard requires that the prison officials were deliberately indifferent to that harm. *Id.*

When describing the bounds of the deliberate indifference inquiry, the Supreme Court explained:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; *the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference*.

*Id.* at 837 (emphasis added). A finding of negligence is not enough. *Verdecia v. Adams*, 327 F.3d 1171, 1177 (10th Cir. 2003).

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. "While the obviousness of a risk is not conclusive and a prison official may show that the obvious escaped him . . . he would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Id.* at 843 n.8 (internal citations omitted).

Defendants do not contest that leaving Plaintiff in the van as they did presented a substantial risk of serious harm. Their theory instead focuses on deliberate indifference—i.e., that Morgan and Gonzales failed to *recognize* the risk of serious harm.

To that end, both Morgan and Gonzales admit they failed in their duty to take care of

4

prisoners on the day of the incident.  Trial Tr. 288:24–289:3 (Morgan); *id.* at 372:1–3 (Gonzales).  They now argue that those admissions may support a finding of negligence or carelessness, neither of which is sufficient to support a finding of deliberate indifference.  True, our Eighth Amendment case law prevents constitutional liability based solely on negligence. *Verdecia*, 327 F.3d at 1177.  Yet, Defendants' argument ignores the remaining evidence presented at trial from which the jury could reasonably infer deliberate indifference.

Morgan and Gonzales denied knowledge that leaving Plaintiff in the unattended van on a summer day in New Mexico would create a substantial risk of serious harm.  Doc. 226 at 11.  In fact, Morgan testified that the day in question was "kind of cool," and she "couldn't say it was hot or warm or anything."  Trial Tr. 316:11–12.  The overwhelming testimony at trial, however, established that July 11, 2013 was a hot day.  For example, Edward Urtiaga, a NMDC prison officer, testified that the day of the incident was "one of the record heats we had in Santa Fe." *Id.* at 570:18–23.  And Tarral Seaboy, another NMDC officer, confirmed it was a very hot day. *Id.* at 946:3–6.  The jury, as the sole arbiters of facts and credibility, could find Defendant Morgan's testimony regarding the temperate lacked credibility.  The jury could also infer that her testimony that the day was "kind of cool" was an attempt to avoid liability and showed consciousness of guilt.

Further, multiple witnesses testified at trial that the risk of harm was obvious.  Derek Williams, Deputy Warden of the Penitentiary of New Mexico ("PNM"), testified people living in New Mexico know that vehicles heat up quickly, that it is dangerous to leave people in a van, and that it can reach life threatening temperatures in a very short period.  *Id.* at 529:16–530:2. Former-inmate, Francisco Herrera testified, "I'm pretty sure we all know, you're not supposed to leave a baby and a dog in the car, you know, with the windows up."  *Id.* at 427:14–17; *see also*

5

Doc. 234, Ex. 4: Vid. Depo. Sharoski Jackson 30:22–23 ("You wouldn't even leave your dog in the car that long."). These excerpts of testimony presented at trial highlight the common-sense risk of leaving a person locked in a car in New Mexico during mid-July. Thus, the jury could reasonably infer the obviousness of the risk and choose to give no weight to Defendants' testimony that they were negligent or careless.

Of course, a prison official "may show that the obvious escaped him." *Farmer*, 511 U.S. at 843 n.8. But Defendants cannot escape liability if the evidence shows they "merely refused to verify underlying facts [they] strongly suspected to be true, or declined to confirm inferences of risk [they] strongly suspected to exist." *Id.*

The evidence in this case supports the inference that "the obvious" did not escape the individual defendants. Before the incident, inmates on the transport complained to Morgan and Gonzales about the heat in the back of the van. Trial Tr. 431:7–16 (Herrera). In fact, multiple witnesses testified that when the inmates complained to Morgan, she argued with the inmates and insulted their manhood. *Id.* at 434:14–435:21 (Herrera); *id.* at 499:6–12 (Williams). Further, Gonzales and Morgan failed to address the inmates' concern about the heat despite knowing that the air conditioner in the transport van did not function reliably. At trial Gonzales admitted the air conditioner in the vans did not work well and did not function at all if the vans were stationary. *Id.* at 360:22–361:15. Morgan also acknowledged that when the vans were running, but stationary, the air conditioner did not work well in the back of the vans. *Id.* at 248:17–21.

Further, Morgan and Gonzales were trained to allow inmates off the van at each prison, so the inmates could drink water and use the restroom. *Id.* at 192:16–25 (Martin Jaramillo); *id.* at 254:25–255:16 (Morgan); *id.* at 416:8–10 (Gonzales). They were also taught to never leave

6

inmates unattended during transport. *Id.* at 192:2–25 (Jaramillo); *id.* at 254:25–255:16 (Morgan); *id.* at 388:17–23 (Gonzales). Despite these obligations, and despite the inmates' complaints about the excessive heat, Morgan and Gonzales did not let the inmates off the van and left the inmates unattended. In fact, some testimony at trial indicated that Morgan and Gonzales intended to leave the inmates confined in the van, with no bathroom, fresh air, or water breaks for more than six hours. *Id.* at 417:19–418:3.

Finally, after the incident during PNM's investigation into their conduct, Gonzales admitted Morgan gave a false name to the inmates. Trial Ex. 9. In fact, both Gonzales and Morgan attempted to blame the other for the incident. Trial Tr. 525:7–16. A jury could rationally conclude that Morgan lied about her identity because she was conscious of her guilt, and that Gonzales and Morgan attempted to blame the other to avoid the consequences of their actions.

Viewing the evidence in the light most favorable to Plaintiff, *see Yazzie v. Sullivent*, 561 F.2d 183, 188 (10th Cir. 1977), the trial record amply supports the jury's conclusion that Morgan and Gonzales were deliberately indifferent to the obvious risk of serious harm. "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Here, a jury could reasonably assume Morgan and Gonzales knew that: (1) the inmates were uncomfortably hot because of their complaints, and (2) that the air conditioner was unreliable even when the vans were running. Yet, they chose to ignore their training, argue with the inmates, and leave the inmates in the back of an unattended van with the van's engine turned off in what one witness described as record-setting mid-summer heat. Accordingly, the jury could

reasonably infer that Morgan and Gonzalez knew of and disregarded a substantial risk to the safety of the inmates in the transport van.

This is not one of the exceptional cases in which the evidence "is susceptible to no reasonable inferences supporting [Plaintiff]." *Johnson*, 371 F.3d at 728. The evidence here is sufficient to support the jury's finding that the individual defendants were deliberately indifferent to an obvious risk of serious harm. The Court denies Defendants' renewed motion for JMOL.

III.

Defendants also move to alter or amend the judgment pursuant to Rule 59(e). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A motion for reconsideration "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.* In their Rule 59(e) motion, Defendants seek remittitur on the compensatory and punitive damages the jury assessed against Defendants.

"When a court concludes that there was error only in the excessive damage award, but no error tainting the finding of liability, it may order a remittitur or grant a new trial if the plaintiff refuses to accept the remittitur." *Klein v. Grynburg*, 44 F.3d 1497, 1504 (10th Cir. 1995). Remittitur is appropriate when the award of damages is clearly against the weight of the evidence and raises an inference that it was based on passion or prejudice. *See Blanke v. Alexander*, 152 F.3d 1224, 1236 (10th Cir. 1998). "[D]efendants bear the heavy burden of demonstrating that the verdict was clearly, decidedly, or overwhelmingly against the weight of the evidence." *Id.* (quoting *Campbell v. Bartlett,* 975 F.2d 1569, 1577 (10th Cir. 1992)). "And absent an award so excessive or inadequate as to shock the judicial conscience and to raise an

8

irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the fact is considered inviolate." *Id.* (quoting *Campbell*, 975 F.2d at 1577) (internal quotation marks omitted).

A.

The jury awarded Plaintiff $1,000,000 in compensatory damages. Defendants claim this award is in excess of the maximum amount supported by the evidence. They ask the Court to decrease the compensatory award to an amount less than $100,000.

As a general matter, courts are deferential to a jury's determination of damages, particularly when damages are awarded for pain and suffering. *See Bennett v. Longacre*, 774 F.2d 1024, 1028 (10th Cir. 1985). "Unlike special damages, such as medical expenses and loss of earnings, which require specific proof, general damages for pain and suffering, such as those present here, are not susceptible to proof by a set dollar amount." *Blanke*, 152 F.3d at 1237 (citing *Williams v. Mo. Pac. R.R. Co.*, 11 F.3d 132, 135 (10th Cir. 1993)); *see also Pahoua Xiong v. Knight Transp.*, Inc., 658 F. App'x 884, 888 (10th Cir. 2016) (unpublished) (describing the "standard for pain-and-suffering damages [as] even more deferential than our standard for economic damage determinations."). Accordingly, "the amount of damages awarded by a jury can be supported by any competent evidence tending to sustain it." *Bennett*, 774 F.2d at 1028 (quoting *Hitchcock v. Weddle*, 304 F.2d 735, 737 (10th Cir. 1962)).

Defendants challenge the award of compensatory damages because Plaintiff did not testify at trial. Quoting Jury Instruction No. 28, Defendants claim that: "Evidence of mental anguish need not be corroborated by doctors, psychologists or other witnesses, but *Plaintiff* must support his claims with competent evidence of the nature, extent, and duration of the harm." (emphasis added). Defendants suggest that this instruction requires Plaintiff to personally testify

9

to support his claim for damages. However, Plaintiff introduced his written grievances to the NMDC regarding the incident. Trial Ex. 6. In those statements, Plaintiff recounts his complaints to Morgan about the heat during the transport and how she "questioned [his] manhood." *Id.* at 2. He also described the immediate heat he felt when the officers left the inmates unattended at PNM North, and how within minutes he was "sweating intensely and starting to get disoriented." *Id.* at 2–3. Plaintiff described his fear for his life in the back of the van. *Id.* at 3. Plaintiff stated that he passed out and when he awoke the other inmates were rocking the van back and forth to get somebody's attention. *Id.* He remembers trying to put his mouth against small holes in the van door to breathe just before "seizing/convulsing hitting my face against the back bumper." *Id.* Finally, he described being "carried to safety" by a correctional officer. *Id.*

Beyond this evidence, during trial, Plaintiff's expert witness, Dr. William Foote, testified extensively about Plaintiff's post-traumatic stress disorder ("PTSD"). He testified specifically about Plaintiff's frequent intrusive recollections of the incident. Trial Tr. 739:20–740:20. Dr. Foote also described the nightmares Plaintiff continued to have multiple times a week several years after the incident. *Id.* at 775:1–5 (Foote); *see also id.* at 868:3–13 (testimony by Plaintiff's mother that he does not sleep like he did before the incident). Dr. Foote further testified that PTSD symptoms are often more severe and longer in duration for people "who experience trauma that is deliberately caused by other people" compared to people who suffer trauma caused by an accident or act of nature. *Id.* at 728:12–729:2, 769:7–13. From their sessions, Dr. Foote opined that Plaintiff has a "serious case of PTSD" that causes "significant disruption" of his life. *Id.* at 787:4–9. He also testified that Plaintiff faces financial challenges to obtaining treatment. *Id.* at 793:7–11, 837:18–838:14 (Foote); *see also id.* at 872:4–14 (testimony by Plaintiff's mother that Plaintiff cannot afford treatment).

During trial, both parties presented evidence regarding prior traumatic events in Plaintiff's life which may have caused PTSD prior to this event. Defendants claim that the evidence suggests that Plaintiff's condition was pre-existing and therefore does not support the compensatory award of $1,000,000. Dr. Foote, however, testified that Plaintiff experienced a new trauma as a result of this incident. *Id.* at 846:16–847:18. He described this new disease as being the source of emotional pain and suffering throughout Plaintiff's daily life. *Id.* at 790:21–791:16. Meanwhile, Defendants' expert witness, Dr. Anne Rose, opined that prior traumatic events in Plaintiff's life caused his PTSD. *Id.* at 1034:25–1035:3 ("[I]t looks like [Plaintiff] had PTSD long before the incident that we're dealing with here."). However, the jury could, in its discretion, credit the testimony of Dr. Foote over that of Dr. Rose. Such a conclusion by the jury would not be illogical—especially in light of the evidence at trial which suggested that Dr. Rose rendered her opinion before even receiving Plaintiff's medical records. *See id.* at 1063:3–1065:10.

Because damages for pain and suffering are not subject to proof by a set dollar amount, Defendants have not met their heavy burden of showing the verdict was "overwhelmingly against the weight of the evidence." *Blanke*, 152 F.3d at 1235–37. The trial record shows extensive evidence regarding Plaintiff's mental state and the incident's impact on his daily life. The jury also heard testimony about the financial barriers preventing Plaintiff from obtaining treatment and the barriers to him being consistently employed. In light of this evidence and the Court's deference to the jury's award of damages for pain and suffering, the Court denies Defendants' motion to alter or amend the judgment with respect to compensatory damages.

B.

"Punitive damages are awarded in the jury's discretion to punish the defendant for his

outrageous conduct and to deter him and others like him from similar conduct in the future." *Smith v. Wade*, 461 U.S. 30, 54 (1983) (internal quotation marks omitted). "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves a reckless or callous indifference to the federally protected rights of others." *Id.* at 56. "The focus must be on whether the defendant's actions call for deterrence and punishment over and above that provided by compensatory awards." *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1121 (2004) (quoting *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1308 (10th Cir. 2003)).

Unlike the compensatory damages award, Defendants do not challenge the amount of the punitive damages awarded by the jury. Instead, they challenge the punitive damages award based on sufficiency of the evidence. Doc. 226 at 20 ("The evidence presented at trial . . . was not sufficient for the jury to conclude that Defendants Morgan and Gonzales acted with an evil motive or with callous indifference."). Defendants, however, did not move for JMOL on the issue of punitive damages under Rule 50(a) at any time during this proceeding. *See* Trial Tr. 907:8–914:4, 1125:2–1129:12 (Defendants' JMOL motions under Rule 50(a)). Because Defendants never sought relief under Rule 50(a) before the jury verdict, they cannot now assert a sufficiency of the evidence challenge under Rule 50(b). Fed. R. Civ. P. 50(b); *see Trotter v. Todd*, 719 F.2d 346, 350 (10th Cir. 1983) ("A motion for a judgment notwithstanding the verdict must be predicated by a motion for a directed verdict pursuant to Rule 50(a)[.]"); *c.f. Hysten v. Burlington N. Santa Fe Ry. Co.*, 530 F.3d 1260, 1275 (10th Cir. 2008) (noting sufficiency of the evidence challenge to punitive damages award pursuant to Rule 50(b)); *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1120 (10th Cir. 2004) (same). Accordingly, Defendants waived their ability to challenge sufficiency of the evidence under Rule 50. *See Flowers v. S. Reg'l*

*Physician Servs. Inc.*, 247 F.3d 229, 238 (5th Cir. 2001) ("If a party fails to move for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on an issue at the conclusion of all of the evidence, that party waives both its right to file a renewed post-verdict Rule 50(b) motion and also its right to challenge the sufficiency of the evidence on that issue on appeal.").

Defendants instead challenge the sufficiency of the evidence supporting the punitive damages award under Rule 59(e). "Sufficiency of the evidence is properly raised under Rule 50(b), but not under Rule 59(e)." *Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013). Because Defendants failed to properly raise their sufficiency of the evidence argument, the Court concludes Defendants challenge to punitive damages is foreclosed.

Even if Defendants' sufficiency of the evidence challenge to punitive damages was properly before the Court, however, the evidence in this case is sufficient to support the jury's assessment of punitive damages against Morgan and Gonzales. The Court instructed the Jury that:

> One acts with malice if one's conduct is motivated by evil intent or motive. One acts with reckless indifference to the protected federal rights of others when one engages in conduct with a callous disregard for whether the conduct violates the protected federal rights of others. Plaintiff has the burden of proving that punitive damages should be awarded by a preponderance of the evidence.

Jury Instruction No. 32; *see also* Doc. 187 (Defendants' proposed jury instructions including similar punitive damages language defining malice and reckless indifference.).

At trial the evidence showed that the individual defendants argued with the inmates after the inmates complained about the excessive heat. Trial Tr. 434:14–435:21 (Herrera); *id.* at 499:6–12 (Williams). Defendant Morgan went so far as to insult the inmates' manhood after they complained. *Id.* at 434:14–435:21 (Herrera); *id.* at 499:6–12 (Williams). Further, Morgan and Gonzales lied to NMDC investigators following the incident, each trying to place blame on

13

the other—Morgan even gave inmates a false name to prevent them from filing grievance reports about the incident.  *See* Trial Tr. 525:7–16; Trial Ex. 9.  In fact, had no incident occurred in the van, testimony at trial indicated that the individual defendants intended to leave the inmates in the van with no bathroom, fresh air, or water for more than six hours.  Trial Tr. 417:19–418:3.  All of this occurred on a day in which New Mexico experienced record breaking heat while traveling in a van with air conditioning that was at best unreliable and which did not work when the van stopped.  *Id.* at 360:22–361:15 (Gonzales); *id.* at 248:17–21 (Morgan).  From this evidence, the jury could conclude by a preponderance of the evidence that Morgan and Gonzales acted with evil motive or reckless indifference.  The evidence is sufficient to support the jury's findings.

IV.

For the reasons stated above, the Court DENIES Defendants' Motion for Judgment as a Matter of Law and Motion to Alter or Amend the Judgment.

>Entered for the Court
>this the 2nd day of July, 2019
>
>/s/ Joel M. Carson III_____
>Joel M. Carson III
>United States Circuit Judge
>Sitting by Designation