IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ISAHA CASIAS,

      Plaintiff,

v.                                                         1:16-CV-00056-JMC-SCY

STATE OF NEW MEXICO DEPARTMENT
OF CORRECTIONS, TARACINA MORGAN
and HERMAN GONZALES,

      Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR TAXABLE COSTS

This matter comes before the Court on Plaintiff's Motion for Attorneys' Fees and Litigation Expenses (Doc. 230) and Plaintiff's Motion for Taxable Costs (Doc. 225). Having reviewed the arguments and the relevant law, the Court grants in part and denies in part Plaintiff's Motion for Attorneys' Fees and Litigation Expenses (Doc. 230) and grants in part and denies in part Plaintiff's Motion for Taxable Costs (Doc. 225).

I.

Plaintiff Isaha Casias brought this civil rights lawsuit against the State of New Mexico Department of Corrections ("NMDC") and two individual NMDC transport officers, Taracina Morgan and Herman Gonzales. Plaintiff alleged Eighth Amendment violations under 42 U.S.C. § 1983 and state law negligence claims against the individual defendants for their actions during a prison transport. Plaintiff claimed NMDC was vicariously liable for the actions of its officers.

In April 2019, the Court held a four-day jury trial on this matter. The jury returned a verdict in favor of Plaintiff, awarding him $1,000,000 in compensatory damages against all the defendants, jointly and severally, and $500,000 in punitive damages against each individual

defendant. On April 12, 2019, the Court entered Judgment on the Jury Verdict ("Judgment") (Doc. 223). Plaintiff now seeks attorneys' fees and litigation expenses under 42 U.S.C. § 1988(b) and taxable costs pursuant to 28 U.S.C. § 1920, Federal Rule of Civil Procedure ("Rule") 54(d), and District of New Mexico Local Rule of Civil Procedure ("Local Rule") 54.

II.

Under 42 U.S.C. § 1988, prevailing parties in civil rights actions are entitled to reasonable attorneys' fees. *See* 42 U.S.C. § 1988(b). Neither party disputes that Plaintiff is a prevailing party pursuant to 42 U.S.C. § 1988(b). Thus, the only question is whether Plaintiff's fee request is "reasonable."

To determine the reasonableness of a fee request, the Court must calculate the "lodestar" amount. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The lodestar "is the product of the number of attorney hours reasonably expended and a reasonable hourly rate." *Id.* (internal quotation marks omitted). "Once an applicant for a fee has carried the burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be a reasonable fee as contemplated by Section 1988." *Id.* (quoting *Cooper v. State of Utah*, 894 F.2d 1169, 1171 (10th Cir. 1990)).

Plaintiff requests $340,403.29 in attorneys' fees.[1] Doc. 240 at 15. In support of this request, Plaintiff attached billing records showing that Matthew Coyte, Plaintiff's lead attorney, billed a total of 381.5 hours[2] at an hourly rate of $350 per hour. Doc. 230, Ex. 1; Doc. 240, Ex. 7. Additionally, Plaintiff requests reimbursement for 198.1 hours of time billed by Vanessa Jaramillo, a paralegal in Coyte's office, at a rate of $135 per hour. Doc. 230, Ex. 1; Doc 240, Ex. 7. Plaintiff also provides billing records of Coyte's co-counsel, Adam Baker. The records

---

[1] This amount is inclusive of litigation expenses also sought under § 1988.

[2] All hours include time spent on post-trial motions.

reflect that Baker billed 353.4 hours[3] at a rate of $300 per hour.  Doc 230, Ex. 2; Doc. 240, Ex. 8.  Finally, Plaintiff submits the records of his fee counsel, Philip Davis.  Davis billed a total of 38.2 hours at a rate of $425 per hour.  Doc. 230, Ex. 3; Doc 240, Ex. 10.  Kristina Tice, a paralegal in Davis's office, billed a total of 9.9 hours at a rate of $135 per hour.  Doc. 230, Ex. 3; Doc 240, Ex. 10.  Plaintiff asks the Court to apply the Albuquerque gross receipts tax rate for Coyte, Davis, Jaramillo, and Tice.  He asks the Court to apply the Santa Fe gross receipt tax for Baker.

### A.  Merits Counsel

Defendants do not dispute the reasonableness of Coyte and Baker's hourly rates.  Further, Judge Yarbrough found the rates requested for Plaintiff's merits counsel were reasonable when awarding attorneys' fees for discovery violations earlier in this litigation.  *See* Doc. 92.  The Court concludes that a reasonable rate for Coyte's legal services is $350 per hour and that a reasonable rate for Baker's legal services is $300 per hour.

#### i.      Matthew Coyte

Defendants contest two specific time entries by Coyte as being unreasonably long for the tasks described.  Defendants also contest a series of time entries for inadequate documentation regarding the tasks performed.

The first entry Defendants challenge is from October 18, 2016, in which Coyte recorded 2.7 hours with the description: "Review Defendant's [sic] Supplemental Initial Disclosures; discuss with staff."  Doc. 230, Ex. 1 at 12.  Defendants' Supplemental Initial Disclosures were 40-pages long.  Defendants claim 2.7 hours is an unreasonable amount of time for Coyte's review.  Doc. 234 at 7.  Defendants further claim the entry is unclear as to why Coyte needed to discuss the disclosures with staff.  *Id.*  Defendants ask the Court to reduce Coyte's hours for this

---

[3] This amount reflects the 0.7 hours attributed to Baker that Plaintiff conceded was improperly added to the fee request.  *See* Doc. 240 at 10.

task from 2.7 to 1.0 hour.  *Id.*

Coyte explains in his supplemental affidavit (Doc. 240, Ex. 7 at 1–2), that the 2.7 hours related to the hours spent reviewing the documentation and included a strategy meeting with the litigation team.  *Id.*  According to the affidavit, the late disclosure by Defendants included inflammatory information regarding the health of additional inmates in the van on the day of the incident, which made the additional meeting necessary.  *Id.*  The Court agrees with Plaintiff that 2.7 hours is a reasonable amount of time for the described tasks.  The Court will award Plaintiff the full 2.7 hours of contested time.

Next, Defendants challenge an entry from September 3, 2017, in which Coyte recorded 3.2 hours to "[r]ead the deposition of Herman Gonzales and review deposition exhibits."  Doc. 230, Ex. 1 at 14.  Gonzales's deposition, however, was 35 pages long and contained no exhibits.  Doc. 234 at 7.  On that basis, Defendants ask the Court to reduce Coyte's time to 1.0 hour for that entry.  *Id.*  However, Coyte explains that his review of depositions exhibits did not reference exhibits to Gonzales's deposition, but exhibits from all the depositions taken in this case.  Doc. 240, Ex. 7 at 2.  The Court reads the billing entry to support Coyte's explanation of the tasks performed and finds he expended his time reasonably.  Thus, the Court will award Plaintiff the entire 3.2 hours of contested time.

Finally, Defendants challenge a series of Coyte's time entries for lack of specificity.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly.").  For example, on September 15, 2017, Coyte billed 2.5 hours with the following description: "Reviewed depositions and made notes."  Doc. 230, Ex. 1 at 15.  On September 18, 2017, Coyte billed 1.2 hours with the following description: "Continue reading depositions."  *Id.*  On September 19, 2019, Coyte billed

4

4.1 hours with the following description: "Continue reading depositions, read Taracina Morgan's statement. Telephonic statement and reviewed for contradictions." *Id.* Defendants contrast these time entries with others in which Coyte provided more detail about the tasks performed. *See* Doc. 234 at 7–8 ("[O]n 9/14/2017, Coyte had billed 5.5 hours to review the depositions and exhibits of Taracina Morgan, Derek Williams and to review DOC policies and procedures. Again on 9/21/2016, 3.4 hours was billed under the following time entry: 'Finished Taracina Morgan's depo. Started witness depositions from family.' On 9/27/2017, Attorney Coyte billed 1.6 hours as follows: 'Continued with reading remaining deposition. Derek Williams; discussed with law clerk how to get evidence of DWI not reported into evidence. Discussed Motion in Limine.'"). Defendants ask the Court for a reduction in hours billed because "Coyte has not documented accurately what hours were spent on which task." *Id.* at 8.

Defendants imply that Plaintiff may be seeking double recovery for certain deposition related tasks Coyte performed based on his purportedly vague descriptions of the tasks performed. The Court disagrees. Coyte's billing records are not sloppy or imprecise. *See Robinson*, 160 F.3d at 1284–85. Coyte's entries are sufficient for the Court to determine the general activity he was performing and that the amount of time spent was reasonable. *Cf. Tenn. Gas Pipeline Co. v. 104 Acers of Land, More or Less, in Providence Cnty., State of R.I.*, 32 F.3d 632, 634 (1st Cir. 1994) (holding that district court did not abuse its discretion by finding that time sheets were not sufficiently detailed when they contained entries such as "'Confer with co-counsel,' 'Confer with client,' 'Review materials,' 'Review documents,' and 'Legal Research' without any indication of the subject matter involved"). The Court will award Plaintiff this contested time.

The Court finds that the hours Plaintiff requests with respect to Coyte are reasonable.

5

The Court awards Plaintiff $144,040.09—the product of 381.5 hours at an hourly rate of $350 and adjusted for the 7.8750% gross receipts tax.[4]

### ii.     Adam Baker

Defendants object to Baker's billing entries between December 13, 2016 and December 29, 2016. These entries relate to Baker's 29.3 hours spent preparing Plaintiff's Response to Defendants' Motion for Summary Judgment ("Response") (Doc. 70). Doc. 230, Ex. 2 at 13. Defendants posit that "charging almost 30 hours to respond to Defendants' Motion for Partial Summary Judgment is excessive and unreasonable." Doc. 234 at 9.

The Court disagrees. Plaintiff's Response was 25 pages, but it contained over 80 pages of exhibits, including affidavits from Plaintiff and Dr. William Foote (Plaintiff's expert witness). Doc. 70. These affidavits required Baker to spend time conferring with Plaintiff and Dr. Foote in addition to researching and drafting the Response. *See* Doc. 240, Ex. 8 at 1–3. The Court finds that the time Baker spent preparing Plaintiff's Response is reasonable.

The Court concludes that the hours Plaintiff requests with respect to Baker are reasonable. Accordingly, the Court awards Plaintiff $114,965.44—the product of 353.4 hours at an hourly rate of $300 and adjusted for the 8.4375% gross receipts tax.[5]

### iii.    Vanessa Jaramillo

Defendants dispute Plaintiff's requested rate of $135 per hour for Jaramillo's services. According to Defendants, a $135 rate does not reflect the prevailing market rate for a paralegal in the relevant community. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). Defendants urge the

---

[4] The Court applies the updated gross receipts tax rate to any attorneys' fees and costs it awards. *See O Centro Espirita Beneficente Uniao Do Vegetal in U.S. v. Duke*, 343 F. Supp. 3d 1050, 1101 (D.N.M. 2018); Gross Receipts Tax Rates, New Mexico Taxation & Revenue Department, http://www.tax.newmexico.gov/gross-receipts-tax-historic-rates.aspx (Albuquerque).

[5] Gross Receipts Tax Rates, New Mexico Taxation & Revenue Department, http://www.tax.newmexico.gov/gross-receipts-tax-historic-rates.aspx (Santa Fe).

Court to adopt a rate of $55 per hour for paralegal services. *See Gutwein v. Taos Cty. Det. Ctr.*, 2016 WL 9774935, at *2 (D.N.M. Nov. 16, 2016) (finding a rate of $55 per hour reasonable for a paralegal in New Mexico in 2016).

The Court disagrees and finds Plaintiff's requested rate of $135 per hour for Jaramillo's paralegal services reasonable. Plaintiff provided Coyte's affidavit attesting to Jaramillo's skill and sixteen years of experience as a paralegal in New Mexico. Doc. 230, Ex. 1 at 6–7. Further, Plaintiff's requested rate is not at the high or low end of paralegal rates in Albuquerque that this Court found reasonable in 2018. *See O Centro Espirita Beneficente Uniao Do Vegetal in U.S. v. Duke* ("*O Centro*"), 343 F. Supp. 3d 1050, 1088 (D.N.M. 2018) (learning from plaintiff's counsel that the Modrall Sperling firm billed its paralegals at hourly rates between $160.00 and $185.00 per hour, the Peifer, Hanson, and Mullins, P.A. firm billed its paralegals at hourly rates between $115.00 and $135.00 per hour, and the Rodey Law Firm billed its paralegals at hourly rates between $105.00 and $125.00 per hour). Finally, Plaintiff provided the 2015 National Utilization and Compensation Survey Report of the National Association of Legal Assistants (NALA), Table 3.4, at p. 3 (Doc. 240, Ex 6), which lists the average hourly rate charged in 2014 for paralegal/legal assistant work in the Southwest Region (New Mexico, Arizona, Oklahoma and Texas, see, Ex. 6, at 9) as $127. *See id.* As rates increase over time, a paralegal rate of $135 per hour appears in line with the regional average. Accordingly, the Court finds the requested paralegal rate of $135 per hour reasonable.

Defendants also contest certain time entries they claim reflect clerical or secretarial work. "Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 (1989). "The relevant inquiry for requested paralegal fees is '*whether the work was sufficiently complex to justify the*

7

*efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder.*'" *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, 122 F. Supp. 3d 1114, 1148 (D.N.M. 2015) (quoting *Eli Lilly and Co. v. Zenith Goldline Pharmaceuticals, Inc.*, 264 F. Supp. 2d 753, 776 (S.D.Ind. 2003)) (emphasis in *Gen. Protecht Grp.*).

In his Reply, Plaintiff withdraws time entries totaling 6.4 hours from his request, acknowledging that time reflected purely clerical work. Doc. 240, Ex. 5, 1–3. The Court agrees that the time entries identified in Plaintiff's Reply are non-compensable clerical work. The Court will reduce Jaramillo's time by 6.4 hours.

Defendants further contend that Jaramillo "block billed" her billing records. Doc. 234 at 6. The term "block billing" refers to "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n.15 (10th Cir.), *cert. denied*, 519 U.S. 928 (1996).

Jaramillo does not separate time spent on paralegal tasks that support the litigation and purely secretarial tasks. The Court reviewed the remainder of the contested time entries and finds that the entries contain both compensable paralegal work and non-compensable clerical work.[6] The Court notes that its review of the tasks show that the compensable tasks took more

---

[6] In *O Centro*, Judge Browning identified certain paralegal tasks that are compensable. He explained:

> While not always the case, paralegals, more often than secretaries or legal secretaries, submit summons to the clerk and call the court for judge information, and there is no reason to assume that these are non-compensable administrative tasks. Even more so, editing the summons is a compensable and non-clerical task.
> . . . .
> The Court will award paralegal fees for attendance at court hearings, preparing documents for the hearing, and redacting documents. The Court concludes that these tasks are not clerical or administrative, but rather are fundamental to the role of a paralegal and are compensable. For example . . . redaction work is

time that the non-compensable tasks.  For example, Jaramillo's billing records frequently include calendaring, a clerical task, with compensable tasks, such as reviewing orders.  *See* Doc. 234 at 4. Accordingly, the Court believes a 20% reduction in Jaramillo's contested hours will fairly compensate Plaintiff for Jaramillo's compensable time.  *See, e.g.*, *BP Pipelines (N. Am.) Inc. v. C.D. Brown Const., Inc.*, 473 F. App'x 818, 835 (10th Cir. 2012) (concluding the district court did not abuse its discretion by reducing BP's recovery by 40% due to block billing); *Payne v. Tri-State Careflight, LLC*, 278 F. Supp. 3d 1276, 1298 (D.N.M. 2017) (reducing the time paralegals billed by approximately 15% because their "time entries do not allow the Court to distinguish how much time was spent on non-compensable administrative tasks."); *U.S. ex rel. Belt Con Const., Inc. v. Metric Const., Inc.*, 2007 WL 5685140, at *11 (D.N.M. Dec. 1, 2007) (reducing an attorney's time by 30% for block billing); *Roy v. Lohr*, 2014 WL 12564091, at *5 (D. Ariz. Aug. 8, 2014) (reducing, in the court's discretion, plaintiffs' attorney fee award by 30% for reconstructed billing).  Accordingly, Plaintiff is entitled to 35.84 of Jaramillo's contested hours, bringing her total hours for this litigation to 182.74.  The Court awards Plaintiff $26,612.56—the product of 182.74 hours at a rate of $135 per hour and adjusted for 7.8750% gross receipts tax.[7]

### B. Fee Counsel

Defendants do not object to the time expended by fee counsel in bringing this motion and formulating the reply.  Defendants also do not object to Davis or Tice's requested rates.  As

---

> nonclerical and is compensable, because it involves knowledge of the applicable rules and the facts of cases to adequately ensure the protection of confidential information.

*O Centro*, 343 F. Supp. 3d at 1088–89.

[7] Gross Receipts Tax Rates, New Mexico Taxation & Revenue Department, http://www.tax.newmexico.gov/gross-receipts-tax-historic-rates.aspx (Albuquerque).

noted above, Plaintiff requests $425 per hour rate for Davis, and $135 per hour rate for Tice, a paralegal.[8]  Because fee counsel's rate and time are uncontested, the Court awards Plaintiff $17,513.51 for Davis's representation—the product of Davis's hours and rate, adjusted for the local gross receipts tax.[9]  The Court also awards Plaintiff $1,441.75—the product of Tice's hours and rate, adjusted for local gross receipts tax.

As set forth above, Defendants shall pay Plaintiff a total of $304,573.44 in attorneys' fees.

### III.

In addition to fees for representation, § 1988 authorizes those fees that are "incidental and necessary expenses incurred in furnishing elective and competent representation." *Brown v. Gray*, 227 F.3d 1278, 1297 (10th Cir. 2000).  "Items that are normally itemized and billed in addition to the hourly rate should be included in fee allowances in civil rights cases if reasonable in amount." *Ramos v. Lamm*, 713 F.2d 546, 599 (10th Cir.1983).  "In other words, reasonable out-of-pocket expenses not normally absorbed as part of law firm overhead should be reimbursed as attorneys' fees under section 1988." *Brown*, 227 F.3d at 1297.

Accordingly, Plaintiff also asks the Court for litigation expenses under § 1988 totaling $33,966.89.  The expenses Plaintiff seeks overlap significantly with Plaintiff's Motion for Taxable Costs.  *See* Doc. 225.  Further, Plaintiff responds to arguments Defendants make in response to his Motion for Taxable Costs in his briefing on litigation expenses.  *See* Doc. 240 at 11–12.  The Court, having spent considerable time sorting through Plaintiff's overlapping motions, will therefore discuss only the objections necessary for the resolution of the contested

---

[8] Defendants do not object to Tice's rate.  However, like Jaramillo, the Court finds the rate of $135 per hour reasonable for a paralegal in New Mexico.

[9] Gross Receipts Tax Rates, New Mexico Taxation & Revenue Department, http://www.tax.newmexico.gov/gross-receipts-tax-historic-rates.aspx (Albuquerque).

expenses.[10]

Defendants first object to Plaintiff's claim of $1,553.64 for "Freelance Attorney-Draft of Complaint and research." Defendants object claiming Plaintiff provided no information regarding the attorney who prepared this document, the attorney's experience, or the amount the attorney is entitled to recover for drafting the complaint. Doc. 234 at 10. The Court agrees with Defendants that Plaintiff provided insufficient support to claim this amount as a litigation expense. While Plaintiff did provide the receipt for the contract attorney's services, Plaintiff provided no information regarding the time spent on each task or the attorney's rate. Thus, Plaintiff provided no way for the Court to determine whether the amount expended is reasonable. Accordingly, the Court will subtract $1,553.64 from Plaintiff's requested expenses.

Next, Defendants argue that the Court may not award expert fees, because 28 U.S.C. § 1920 and Local Rule 54.2(c) do not permit the recovery of expert fees.[11] Of course, Defendants' response ignores that Plaintiff is claiming fees pursuant to § 1988. Plaintiff argues that expert witness fees and deposition costs are costs that are usually billed separately to a client and not absorbed into overhead or hourly rates. Therefore, Defendants claim expert witness fees are properly included under § 1988.

Plaintiff's position, however, overlooks the Supreme Court's holding that "§ 1988 does not authorize awards of expert witness fees because § 1988 supplies no 'explicit statutory authority' to award expert witness fees." *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 878 (2019) (describing *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 87 (1991) (superseded

---

[10] The following discussion addresses only expenses in dispute. Nonetheless, the Court has reviewed all undisputed expenses. The Court agrees they are compensable and will award them.

[11] Local Rule 54.2(c) provides: "An expert witness fee is not taxable under 28 U.S.C. § 1920 unless the Court, *sua sponte* or on motion by a party, appoints the expert and approves the fee amount. An expert witness not appointed by the Court will be paid the same fee as a lay witness." D.N.M.LR-Civ. 54.2(c)(2).

by statute on other grounds)). Since *Casey*, Congress has amended § 1988 to permit courts to award expert witness fees to prevailing parties in civil rights actions, but only for cases arising under 42 U.S.C. §§ 1981 and 1981(a). *See* 42 U.S.C. § 1988(c) ("[i]n awarding an attorney's fee under subsection (b) in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee."). Because Plaintiff brought this action pursuant to § 1983, § 1988 does not provide for the recovery of expert witness fees. *Id.*; *Rios v. Stupka*, 968 F.2d 21 (10th Cir. 1992) (unpublished) (holding that because action was brought pursuant to § 1983, Plaintiff was not entitled to an expert witness fee under § 1988); *O Centro*, 343 F. Supp. 3d at 1099 n.29 ("The Supreme Court's and the Tenth Circuit's determinations that expert witness fees are not recoverable in [§ 1983] civil rights cases binds the Court."). Accordingly, the Court denies Plaintiff's request for expert fees in the amount of $17,226.39.

Finally, Defendants object to $305.14 worth of office supplies Plaintiff seeks as litigation expenses. Defendants claim the receipts provided by Plaintiff do not provide enough detail to describe the specific items Plaintiff is seeking reimbursement. Doc. 234 at 11. The Court has reviewed the purchases subject to Defendants' objections and finds them to be reasonable and necessary for litigation. The Court directed the parties during the pretrial conference to create exhibit notebooks for every juror and the Court. Plaintiff represents to the Court that the parties agreed that Plaintiff would supply the notebooks including both Plaintiff's and Defendants' exhibits. Coyte attests that Plaintiff provided receipts for these expenses. Coyte also attests that his firm does not absorb these expenses but passes them onto clients. Doc. 240, Ex. 3 at 3. Accordingly, the Court finds the $305.14 of office supplies is recoverable under § 1988.

Because Plaintiff seeks recovery under § 1988 or alternatively as costs pursuant to § 1920

and Rule 54(d), Plaintiff responds to one of Defendants' objections to his Motion for Taxable Costs (Doc. 233) in his Reply to Defendants' Response to Plaintiff's Motion for Attorneys' Fees and Litigation Expenses (Doc. 240). Accordingly, the Court will address that objection here.

Defendants object to the cost of "Copies for Posters for Trial ($62.54), Copies of Map for Trial ($10.78) and Costs for Copies of Poster for Trial ($36.66)." Doc. 233 at 2. Plaintiff agrees these are not properly recoverable as taxable costs because pursuant to Local Rule 54.2(f) costs of photographs larger than 8"x10"; costs of models; or the cost of compiling summaries, computations, or statistical comparisons are not taxable as costs. D.N.M.LR-Civ. 54.2(f). Plaintiff, however, claims these costs are properly recoverable as litigation expenses, because they were reasonable and necessary to Plaintiff's prosecution of his case at trial and are not costs or expenses normally absorbed as overhead in a lawyer's practice but rather are passed on as expenses to the client. *Brown*, 227 F.3d at 1297 (10th Cir. 2000) ("out-of-pocket expenses" can be recovered pursuant to § 1988 if they are "items that are normally itemized and billed in addition to the [attorney's] hourly rate.") (citation and internal quote marks omitted). In support, Plaintiff submits Coyte's affidavit affirming that the firm does not absorb these expenses as overhead but instead bills the clients. Doc. 230, Ex. 1 at 8. The Court will allow Plaintiff to recover these copy costs as § 1988 attorneys' fees.

In review, Plaintiff seeks total litigation expenses of $33,966.89. For the reasons set forth above, the Court will reduce the award of litigation expenses sought by Plaintiff under § 1988 by $18,780.03,[12] bringing Plaintiff's litigation expenses to $15,186.86. Plaintiff seeks further recovery of expenses under § 1920. Many of these expenses are duplicative of the expenses Plaintiff seeks under § 1988. To avoid double recovery of these remaining expenses, the Court

---

[12] This amount reflects the costs of the contract attorney and expert witness fees.

reduces the $15,186.86 sought by Plaintiff under § 1988 by $9,925.80[13]—the amount of duplicative expenses Plaintiff seeks under both § 1988 and § 1920. Accordingly, the total amount of expenses awarded to Plaintiff under § 1988 shall be $5,261.06

The Court finds that Plaintiff is entitled to fees for representation ($304,573.44) and litigation expenses ($5,261.06), for a total fee award of $309,834.50 under § 1988.

### IV.

"For items not reimbursable as attorney's fees under § 1988, the general costs statute, 28 U.S.C. § 1920, is controlling." *Ramos*, 713 F.2d at 560. Section 1920 provides that a judge or clerk of any court of the United States may tax certain fees as costs. 28 U.S.C. § 1920. It works in tandem with Rule 54(d), which provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 45(d). Under this rule, costs include clerk and marshal fees, court reporters' fees, printing and witness fees, copying fees, and certain docket fees. 28 U.S.C. § 1920.

Plaintiff seeks as costs $572.90 for fees and disbursement for printing and witnesses. In support, Plaintiff provides an invoice from December 26, 2016 from David Thompson for $247.90. Doc. 255, Ex. 3 at 7. The invoice includes a handwritten note which states, "both invoices $572.90." *Id.* Plaintiff, however, has failed to provide an invoice reflecting the handwritten amount.[14] The Court finds that only the amount reflected in the invoice submitted to the Court is recoverable as a cost. Accordingly, the Court will reduce Plaintiff's costs by

---

[13] Plaintiff requests $10,035.78 as § 1920 costs. The Court, however, awarded Plaintiff $109.98 sought initially as costs, as attorneys' fees under § 1988. Accordingly, the Court subtracts that amount from Plaintiff's § 1920 request.

[14] Plaintiff provided Coyte's affidavit attesting to the total amount paid to Thompson as $572.90. Doc. 340, Ex. 3. Unlike other costs where the Court credited Coyte's affidavit, this statement does not clarify an actual receipt or billing record. Because the invoice shows an amount of $247.90, that is the amount the Court awards.

$325.00.

Plaintiff also seeks costs for the depositions of John Lerma, Michael Petta, Ivan Bradley, Edward Urtiaga, Dr. Jay Ciotti, Isaha Casias, Becky Chestnut, Mark Chestnut, Amber Maestas, and Andrea Michele. Defendants object to these costs because Plaintiff used none of the depositions during trial as evidence or for impeachment or for a summary judgment ruling of the Court. Thus, Defendants argue that the costs associated with the depositions were "discovery depositions" and not subject to costs under § 1920. Defendants further argue that the depositions are not "reasonably necessary" to the litigation under Local Rule 54.2(b)(2).

The costs statute, 28 U.S.C. § 1920, "allows a judge or clerk of any court of the United States to tax costs for transcripts and copies 'necessarily obtained for use in the case.'" *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1147 (10th Cir. 2009) (quoting 28 U.S.C. § 1920(2) & (4)). The Tenth Circuit has interpreted this language to include "'materials or services . . . reasonably necessary for use in the case,' even if they are ultimately not used to dispose of the matter." *Id.* at 1148 (quoting *Callicrate v. Farmland Indus., Inc.*, 139 F.3d 1336, 1339 (10th Cir. 1998)). In such cases, "the district court 'can find necessity and award the recovery of costs.'" *Id.* (quoting *Callicrate*, 139 F.3d at 1339). Thus, the Court will not "penalize a party who happens to prevail [at trial] by not awarding costs associated with that portion of discovery which had no bearing on the [trial], but which appeared otherwise necessary at the time it was taken for proper preparation of the case." *Callicrate,* 139 F.3d at 1340.[15]

Defendants rely on *Furr v. AT & T Techs., Inc.*, 824 F.2d 1537 (10th Cir. 1987), for the

---

[15] In *Callicrate*, the Tenth Circuit analyzed "just costs" pursuant to 28 U.S.C. § 1919. The court, however, relied heavily on costs allowed under 28 U.S.C. § 1920, stating that "the standards applied under § 1920 are helpful" to its analysis. *Callicrate*, 139 F.3d at 1339. Courts in this district rely on the principles from *Callicrate* in § 1920 cases. *See, e.g.*, *Silva v. Goodwill Indus. of New Mexico, Inc.*, 1999 WL 35808985, at *1 (D.N.M. Aug. 9, 1999); *Nelson v. Bd. of Educ. of Albuquerque Pub. Sch.*, 2012 WL 13070067, at *1 (D.N.M. Dec. 11, 2012).

15

proposition that "[d]epositions taken solely for discovery are not taxable as costs, but if the depositions were actually introduced in evidence or used at trial for impeachment purposes, then it is proper to conclude that they were necessarily obtained for use in the case." *Id.* at 1550 (internal quotation marks omitted). The Tenth Circuit, however, has since acknowledged that depositions not introduced in trial or relied on for a dispositive motion, *may* be recovered as costs. *C.f. Callicrate*, 139 F.3d at 1340. The Tenth Circuit explained:

> Necessarily obtained does not mean that the materials obtained added to the convenience of the parties or made the task of the trial judge easier, and the "most direct evidence of necessity is the actual use of materials obtained by counsel or by the court. However, if materials are reasonably necessary for use in the case although not used at trial, the court is nonetheless empowered to find necessity and award costs.

*Id.* (internal citations and quotation marks omitted).

Further, Local Rule 54.2(b)(2) provides

> A deposition is reasonably necessary to the litigation when:
> A. a substantial portion of the deposition is admitted into evidence or used at trial for impeachment purposes;
> B. the deposition is used by the Court in ruling on a motion for summary judgment; or
> C. the Court so determines.

D.N.M.LR-Civ. 54.2(b)(2). Defendants are correct that none of the depositions fit within the definition of "reasonably necessary" articulated in Local Rule 54.2(b)(2)(A), (B). Yet, "[Local Rule] 54.2(b)(2)(C) gives the Court wide discretion to determine when a deposition is reasonably necessary." *Billy v. Curry Cty. Bd. of Cty. Commissioners*, 2015 WL 12990789, at *2 (D.N.M. Sept. 11, 2015).

Plaintiff, however, did not meet his burden of showing the depositions of John Lerma, Michael Petta, Ivan Bradley, Edward Urtiaga, Dr. Jay Ciotti, Isaha Casias, Becky Chestnut, Mark Chestnut, Amber Maestas, and Andrea Michele were reasonably necessary for use in the case.

16

Plaintiff submitted to the Court Baker's sworn statement that the depositions were reasonably necessary to prepare witnesses for trial and for counsel to prepare for trial. Doc. 241 at 3–4; Doc. 240, Ex. 4. His conclusory statement is not enough. Indeed, without further explanation the Court cannot evaluate whether these deposition costs were in fact reasonably necessary. Because Plaintiff's explanation does not convince the Court that these depositions were not taken solely for discovery, *see Furr*, 824 F.2d at 1550, the Court will reduce Plaintiff's requested costs by $2,629.51—the costs Plaintiff claims for these depositions and the associated transcripts.[16]

Finally, Defendants object to Francisco Herrera's $710.00 witness fee for the round trip from Albuquerque to Roswell under Local Rule 54.2(c)(1)(B). Plaintiff claims that $710.00 witness fee covers the necessary cost of a private transportation service that brought Herrera from Albuquerque to Roswell for the trial.

Local Rule 54.2(c)(1)(B) allows for a lay witness to be "paid the smaller of: (i) mileage for the distance from the witness's residence to court; or (ii) the per diem rate specified by 28 U.S.C. § 1821." D.N.M.LR-Civ. 54.2(c)(1)(B). Plaintiff stated in his Motion for Taxable Costs that Herrera was living at Joy Junction in Albuquerque, New Mexico. Doc. 225 at 7. The distance between Joy Junction and the Roswell federal courthouse is approximately 210 miles. Accordingly, the mileage allowable for Herrera is $243.60. Meanwhile, the per diem rate specified by 28 U.S.C. § 1821 is $40 per day, including necessary time spent traveling to the courthouse. 28 U.S.C. § 1821. Herrera testified and traveled roundtrip to Roswell on the same day. *See* Doc. 249, Ex. 3 at 3. The Court finds that Herrera is entitled to the per diem rate, bringing the statutory amount to which he is entitled to $40. Because the § 1821 amount is less than the mileage, the Court will award $40 for Herrera's travel pursuant to Local Rule

---

[16] Defendants request the Court reduce Plaintiff's deposition related costs by $3,347.83. The Court, however, reviewed the record and calculates the reduced costs at $2,629.51.

54.2(c)(1)(B).[17]

Accordingly, the Court finds that Plaintiff is entitled to $6,301.29 as costs.

V.

For the reasons stated, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Attorneys' Fees and Litigation Expenses (Doc. 230). Pursuant to 42 U.S.C. § 1988, the Court awards Plaintiff $309,834.50. Further, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Taxable Costs (Doc. 225). Accordingly, the Court awards Plaintiff $6,301.29 under 28 U.S.C. § 1920.

Defendants shall pay these amounts to Plaintiff.

Entered for the Court
this the 3rd day of July, 2019

/s/ Joel M. Carson III
Joel M. Carson III
United States Circuit Judge
Sitting by Designation

---

[17] The Court notes Plaintiff could have transported Herrera to Roswell for less money than the cost of the private transportation service. Even buying him a roundtrip airline ticket would have been hundreds of dollars less.